# ARTHUR E. THOM v. NORTHERN PACIFIC RAILWAY COMPANY.[1]

February 2, 1934.

No. 29,719.

[1]Reported in 252 N. W. 660.

*D. F. Lyons, Frederic D. McCarthy,* and *D. R. Frost,* for appellant.

*Bundlie & Kelley* and *Joseph W. Finley,* for respondent.

*HILTON, Justice.*

Action under the federal employers liability act to recover $35,315 for the death of Stanley Prybelek, a section laborer in the employ of the defendant. Plaintiff had a verdict for $7,965. Defendant appeals from the judgment entered after the denial of its motion for judgment notwithstanding the verdict.

In the forenoon of October 31, 1931, a section crew of which deceased was a member was riding on a gasolene motor car proceeding southerly toward a place at which the noon hour was to be spent. When approximately 150 feet north of Johnson Parkway, in St. Paul, at about 11:45 a. m., the motor car was derailed as it passed over a bolted frog that was part of a temporary single track leading to the right off from the main track. The temporary track

had been installed to permit trains to go around an overhead viaduct which was then being constructed by the city of St. Paul so that Johnson Parkway could pass under the double tracks of the defendant. A rail anchor iron had been inserted into the slot of the frog by some boys in play 30 or 40 minutes before. The left front wheel of the motor car collided with the obstruction, and the derailment followed. Deceased was thrown from and run over by the car, receiving the injuries from which he died a few hours later. He was 49 years old and had worked for defendant more than 16 years on the same section and under the same foreman.

The motor car, a Fairmount, was six and a half feet long and five and a half feet wide. On the platform of the car, over its wheels, was a board seat on each side the full length of the car and facing away from the center thereof. At the ends and back of each seat was an iron pipe railing. Between the backs of the two seats and in the rear portion of the car was the driving wheel and a raised cushioned seat occupied by the driver. Two section men sat on the left side seat, and deceased was at the forward end of the right side seat. The foreman of the crew, Pollreis, sitting somewhat higher than the others (on the cushioned seat) and facing straight ahead, was driving the car. It was his intention to pass over the frog and to take the temporary or right-hand track. In so doing, the wheels on the left side of the car would necessarily pass over the frog, which was located on the inside rail. Deceased was riding directly over the outside rail.

The track where the accident occurred was practically straight, and the car was proceeding down a grade having a drop of about three inches to 100 feet. The temperature was 45 degrees above zero, with a slight wind blowing from the north. The day was cloudy, a light rain having fallen prior to 7:30 a. m. The visibility at the time of the accident was good. Pollreis, whose eyesight was good, testified that if as the car was going along he had looked at the frog he could have seen it probably quite plainly at a distance of 400 feet and could have seen the anchor iron, which stuck up above the frog two and a half inches, when 30 feet away from it. He admitted making a statement in the presence of three persons that

the reason he was not looking at the track or frog was that he was watching some men who were at work upon and under the viaduct 150 feet away and one man who was 100 feet away. Another witness, who later made a test especially for the purpose, said that he saw a like iron placed in a like position when 75 feet from it. Another witness stated that in his opinion such an iron in such a position should be seen at a distance of 125 feet. There was evidence that under the conditions existing at the time of the accident the anchor iron as then placed could be seen better on a cloudy day than on a bright sunshiny day.

Pollreis testified that at a point 200 feet from the place of the accident he was driving the car at a speed of eight miles per hour and then started reducing it to between five and six miles an hour, and was going at that speed for about 100 feet before and at the time of the accident; that he so reduced the speed because it was not safe to pass over the frog onto the right-hand track at a speed of eight miles an hour; that on a level track at a speed of five or six miles an hour the car could have been stopped in 12 feet. An engineer expert testified that if the car could be stopped in 12 feet on a perfectly level track it could be stopped in 12.831 feet on a track having a decline of six inches in 100 feet. Another witness, familiar with the operation of such a motor car, testified that under the conditions existing at the time of and prior to the accident the car could have been stopped in three feet if going at the rate of speed claimed by Pollreis. There was a variance in the evidence as to where the car stopped after the accident. Pollreis stated the car went between 12 and 15 feet on the ground and ties before it came to a stop; another witness, one of the laborers riding upon the car at the time of the accident, testified that it went 14 or 15 feet. However, in a written statement made before the trial and admitted in evidence, the latter stated that the car went 30 to 35 feet after it went off the track before it stopped.

Written rules of the company were admitted in evidence. They are:

"Track Foremen

"1735. They must closely inspect sections as often as possible; pass over or send one of their men, during storms when the road is liable to be damaged, at least once every day or more frequently during the continuance of storms if circumstances demand; pass, or send one of their men, over track under their charge, when no damage thereto is threatened by storms or unusual conditions, at such intervals as may be specified by the roadmaster or other proper authority, or as may be necessary to insure safety. In going over track as above, take a track wrench, spike maul, six torpedoes, three red flags and (when likely to be needed) one white and two red lamps. Carefully examine road to see if safe for passage of trains. If any place is found unsafe, it must be protected at once by a flagman with red signals and torpedoes. Observe all main track switches and see that they are securely locked."

"54. Cars must be operated under full control, prepared to stop, when approaching highway crossing and places where track or other gangs are at work on tracks and bridges."

"62. While operating hand or motor cars, when sufficiently manned, at least one man shall face each direction to watch for trains, cars and obstructions. * * *"

Pollreis testified that he inspected the tracks from his seat as he drove the car and that just prior to the accident he was looking straight ahead. Apparently, however, he was not looking directly at the track or the frog, for, as hereinbefore noted, he himself stated that he was looking at the men at work upon or around the viaduct. Although testifying that the men riding toward the front of the car were supposed to look ahead for obstructions upon the track and that he had instructed them so to do, he stated, when asked if he did all the looking ahead or let some of the men do it, "I done that myself."

Defendant's contentions are:

(1) That no actionable negligence on the part of defendant had been shown.

(2) That the derailment and the death of plaintiff's intestate were the result of the sole negligence of the deceased.

(3) That the death occurred as a result of and was due to risks of the employment that were open and obvious to deceased and which he assumed.

(4) That the act of the trespasser was the proximate cause of the derailment and fatal injuries to deceased.

■ Defendant's only motion having been for judgment *non obstante*, but one question is here for determination—does the evidence clearly show that plaintiff was not entitled to recover? Herman v. Wabash Ry. Co. 153 Minn. 195, 189 N. W. 934; 3 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5085. The view of the evidence most favorable to plaintiff must be accepted. The judgment will not be reversed even though the evidence was such that the trial court in its discretion ought to have granted a new trial; it must be clear from the whole record that the moving party, as a matter of law, was entitled to judgment on the merits. Marquardt v. Hubner, 77 Minn. 442, 80 N. W. 617; Farmers State Bank v. Merchants & M. State Bank, 164 Minn. 300, 204 N. W. 965. In other words, the evidence must be so conclusive as to compel, as a matter of law, a contrary result. Northwestern M. & T. Co. v. Williams, 128 Minn. 514, 151 N. W. 419, L. R. A. 1915D, 1077; Smith v. Gray Motor Co. 169 Minn. 45, 210 N. W. 618; Schendel v. C. M. & St. P. Ry. Co. 181 Minn. 395, 232 N. W. 629.

■ The manner in which the accident occurred was disclosed by witnesses friendly to defendant; no one other than defendant's employes saw the accident. But even from their own version thereof it certainly cannot be concluded as a matter of law that the foreman at least, if not also the man sitting up front on the left side, was not negligent in failing to keep a proper lookout for obstructions upon the track and in failing to see such an obstruction then in plain view in ample time to stop the motor car. Both these men from their positions on the car had a better opportunity to detect obstructions upon the left track than did deceased, who was seated on the right side with his body facing westward. The rules of the company, as well as Pollreis' own testimony, show that it

was primarily his duty, as foreman of the crew, to inspect the tracks and watch for obstructions thereon. The jury could also find from the evidence that the motor car was being operated at an unsafe speed under the circumstances.

In Koralewski v. G. N. Ry. Co. 85 Minn. 140, 141, 88 N. W. 410, the order of the trial court denying defendant's motion for judgment notwithstanding the verdict or for a new trial was reversed and a new trial granted for the reason that the record failed to disclose "the lay of the track,—whether it was straight or on a curve, —at what distance such an obstruction could have been seen, nor how soon the car might have been stopped." The court stated [85 Minn. 141]: "In the absence of evidence in these respects, it cannot be assumed that the accident would have been prevented even had the foreman been looking ahead." That case is of interest only for the purpose of comparison. In the instant case the record does disclose that the foreman, had he seen the obstruction, could have stopped the car in time to prevent the accident; that he could have seen the obstruction had he looked at any time when within 30 feet of it or perhaps a greater distance; that the track was straight, and within what distance the car could have been stopped.

■ Under the federal employers liability act contributory negligence on the part of the injured or deceased person is of course not a complete defense for the carrier. Such negligence must be shown to have been the primary cause of the injury or death in such sense as to render immaterial any neglect on the part of other employes or officers of the railway company. If the death resulted "in whole or in part" from the negligence of any of defendant's officers, agents, or employes, it is liable. U. S. Code, title 45, § 51; Rocco v. Lehigh Valley R. Co. 288 U. S. 275, 53 S. Ct. 343, 344, 77 L. ed. 743. See Stritzke v. C. G. W. Ry. Co. 190 Minn. 323, 251 N. W. 532. On the record here it cannot be held as a matter of law that the negligence, if any, of plaintiff's intestate was the sole cause of his death. Such a holding would necessitate a conclusion, contrary to the evidence, that the accident did not result even "in part" from the negligence of defendant's foreman. In what proportion the negligence of the

deceased, if the jury found there was such negligence, contributed to the accident, was a question properly for the jury.

Appellant cites Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. ed. 212; G. N. Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 408, 60 L. ed. 732; Frese v. C. B. & Q. R. Co. 263 U. S. 1, 44 S. Ct. 1, 68 L. ed. 131; Unadilla Valley Ry. Co. v. Caldine, 278 U. S. 139, 49 S. Ct. 91, 73 L. ed. 224; and Washington, B. & A. Elec. R. Co. v. Cook, 144 Md. 324, 125 A. 172, 174. They are readily distinguishable from the present case. In those cases the servant killed was, respectively, engineer, rear brakeman, engineer, conductor, motorman, each of whom violated a positive company order, or a state law, directed primarily to himself, imposing a positive personal duty. The accident in each case was a direct result of such violation; the negligence of each was the primary or sole cause of the accident which in each case resulted in death. In all of them except G. N. Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. ed. 732, the servant killed was in control of the train. Their positions may be likened to that of the foreman in the instant case, but certainly not to that of the deceased. In Washington, B. & A. Elec. R. Co. v. Cook, 144 Md. 324, 125 A. 172, the claim was made that the conductor on the train was guilty· of such negligence as made the railway company liable notwithstanding the negligence of the motorman. In that case [144 Md. 330] both men had personal orders as to the movement of their train under certain circumstances; the company's rules made both "equally responsible for the violation of any of the rules governing the safety of their trains." If the motorman had obeyed the order directed to him the accident would not have occurred. In G. N. Ry. Co. v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. ed. 732, plaintiff's intestate was a rear brakeman on a freight train which broke in two by the drawbar pulling out of one of the cars. Within three to five minutes a passenger train crashed into the rear portion of the freight train, killing the brakeman and the conductor thereof, who were at the time in the caboose. Negligence of fellow employes or officers was not involved. This court (Wiles v. G. N. Ry. Co. 125 Minn. 348, 147 N. W.

427) applied the doctrine of *res ipsa loquitur* against the railway company and held that if the injury resulted from the concurring negligence of the deceased in failing to warn the approaching train, and of the railway company in failing to furnish a proper appliance in the way of a drawbar, the doctrine of comparative negligence was applicable under the federal employers liability act. The Supreme Court of the United States reversed, holding that the duty of the deceased brakeman was so imperative that his failure to perform it was inexcusable. The court said [240 U. S. 448]:

"In the present case there was nothing to extenuate Wiles' negligence; there was nothing to confuse his judgment or cause hesitation. His duty was as clear as its performance was easy. He knew the danger of the situation and that it was imminent; to avert it he had only to descend from his train, run back a short distance, and give the signals that the rules directed."

In the instant case the deceased did not have control of the car; his duty to watch for obstructions was secondary to that of the foreman; there is nothing to show that if he had seen the obstruction when within a few feet of it he could have signaled the foreman in time for the latter to stop the car; from his position on the car it is probable that he did not have as clear a view over the left-hand track as did the foreman, and the section-hand riding front on the left side; the presumption of due care is in favor of the deceased.

■ Whether the deceased assumed the risk was also for the jury unless the evidence was conclusive. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 5998. It was not so here. The jury had ample evidence to decide as it did. In Greisch v. M. St. P. & S. S. M. Ry. Co. 160 Minn. 83, 88, 199 N. W. 517, 519, it is stated:

"Assumption of risk was pleaded as a defense. It is enough to say that upon this record it cannot be held as a matter of law that the deceased assumed the risk of his foreman's failure to perform his duty to keep a lookout for trains and give timely warning." See Stritzke v. C. G. W. Ry. Co. 190 Minn. 323, 251 N. W. 532.

The Supreme Court of the United States in Rocco v. Lehigh Valley R. Co. 288 U. S. 275, 278, 53 S. Ct. 343, 77 L. ed. 743, said:

"Under the authorities cited the decedent assumed the risks ordinarily incident to his employment as a track inspector, but in the circumstances shown we do not think they included a failure on the part of the motorman to keep a lookout and to give warning in places where the view of one who might be expected to be on the track or approaching in the opposite direction was shut off and the probability of accident was therefore much greater than where the track is straight and the view unobstructed."

We cannot hold as a matter of law that deceased assumed the risk of his foreman's negligence.

■ Appellant asserts that the proximate cause of the derailment and fatal injuries to deceased was the act of the trespasser in inserting the rail anchor iron in the frog. Cases from other jurisdictions are clearly distinguishable upon their facts. The only Minnesota case cited to us upon that point is Slater v. C. St. P. M. & O. Ry. Co. 146 Minn. 390, 178 N. W. 813, 814. The negligence alleged against defendant in that case was a defective and insecure running board on a refrigerator car in a train of defendant upon which plaintiff was a brakeman, the defect not being in the running board itself, but because the cover of the ice bunker had been displaced by a tramp so that it protruded upon the running board. Plaintiff, in stepping from the running board of a freight car to that of the refrigerator car ahead, tripped upon the ice bunker cover and fell between the cars and was injured. The court said [146 Minn. 392]:

"It cannot be contended that any case of common-law negligence was made out. There is no testimony tending to show that any one of the train crew knew of the tramp's presence, or ought to have discovered his meddling with the cover."

In the instant case plaintiff has made out such a case, and, having done so, the act of the trespasser loses its effectiveness as a defense. Here the evidence shows that boys had been in the habit of playing

on the railroad right of way during the construction of the Johnson Parkway viaduct. The foreman had observed them and had seen them at times place obstructions upon the track. The day was Halloween. Pollreis was aware of that fact and that boys were accustomed to indulge in pranks on that day. Most important, however, is his own statement that if he had been looking at the track and frog, as his duty demanded, he could have seen the obstruction in ample time to stop the motor car, thereby avoiding the accident. The jury having found upon sufficient evidence that the defendant was negligent through its foreman's failure to keep a watchful lookout for obstructions, under the circumstances and in obedience to his instructions (even without considering the question of speed), defendant cannot successfully assert the act of the trespasser as a defense.

Affirmed.

*HOLT, Justice* (concurring).

There may be sufficient evidence of negligence in the speed at which the foreman operated the car over the frog to sustain recovery. In my opinion the foreman cannot be charged with negligence in failing to discover the small article the boys inserted in a slit in the frog.

*DIBELL* and *STONE, Justices* (concurring specially).

We think liability is rested better upon the ground of negligent speed.