## MINNIE C. PETERSON v. WILLIAM NORRIS.[1]

February 1, 1935.

No. 30,191.

[1]Reported in 258 N. W. 729.

*Garfield H. Rustad, Richardson, Thorp & Wattam,* and *Charles J. Vogel,* for appellant.

*C. G. Dosland* and *F. H. Peterson,* for respondent.

DEVANEY, CHIEF JUSTICE.

This is an action for wrongful death arising out of the following state of facts: About one a. m. on the morning of June 13, 1933, an automobile overturned on a main highway about four miles south of Moorhead, Minnesota.. The highway is straight and runs north and south. The overturned car lay directly across the east half of the highway, the bottom thereof facing south so that it completely obstructed the lane usually used by northbound traffic. The fact that this car was overturned on the highway was reported to a garage in Moorhead. One Ambuhl, who was then in charge of the garage, set out with the wrecking car to remove the overturned automobile. At the time the report came, J. Paul Peterson, the deceased, happened to be in this garage. Peterson resided near this highway a few miles south of or farther from Moorhead than where the overturned car lay. Peterson was a skilled mechanic but was not employed by this garage; nor was he employed to assist in removing this particular wrecked car. He had no interest, financial or otherwise, in the equipment used in removing the same, no control over the operation of removing it, and no authority to direct how the work was to be conducted. As far as appears from the record, he merely happened to be in the garage when the call came. He was about to go home anyway, and so agreed to stop and help Ambuhl as a matter of accommodation.

Peterson was driving his own car and arrived at the scene of the wreck first. He parked his car about 20 feet north of the overturned car on the east half of the highway with his headlights shining directly upon the overturned car. The west half of the road was left open and clear. Very shortly thereafter Ambuhl arrived with the wrecking car. He parked immediately south of the overturned car on the east half of the highway with headlights shin-

402

ing to the south. A spotlight which was on the rear of the wrecking car was adjusted so as to shine on the overturned car. Nowhere in the evidence is it suggested that this was not a proper or expedient way in which to place the wrecking car. Thus the three cars, Peterson's car to the north, the overturned car in the middle, and the wrecking car to the south, were all on the east side of the highway. Lights were shining on the overturned car from both directions. The west side of the highway was entirely clear. One Edwards, a constable, who had accompanied Ambuhl from Moorhead, placed himself on the highway about 25 feet south of the wrecking car to flag and warn northbound traffic.

While Ambuhl and Peterson were attempting to fasten a chain to the overturned car so as to be able to right it, Peterson was hit by defendant's car and received fatal injuries. Defendant was coming from the south, using the east half of the highway. He and a young lady had been to Breckenridge, where they had had "a number of drinks in the different places." He was traveling at about 40 to 45 miles per hour. As he approached, the two headlights of the wrecking car were shining directly at him, the wrecking car being on the east or wrong side of the highway from his standpoint. Three or four times before the collision occurred Edwards attempted to wave defendant down with his hands. Edwards testified that defendant, when asked by Edwards, "Didn't you see me waving you down?" answered, "Yes," but "my brakes would not hold." Though the entire west side of the road was clear, defendant claims he thought he could pass the wrecking car on the east side. As a result he hit the bottom of the overturned car where Peterson was working.

We have stated the evidence most favorable to plaintiff, for it is this evidence which must be considered where there is no motion for a new trial and the appeal is taken from a judgment entered after denial of defendant's motion for judgment notwithstanding the verdict. Thom v. N. P. Ry. Co. 190 Minn. 622, 252 N. W. 660.

On the trial the case was submitted to the jury, who returned a verdict for plaintiff in the amount of $4,008. Three questions are presented on this appeal:

(1) Was defendant guilty of negligence?

(2) Was Peterson, the deceased, guilty of contributory negligence?

(3) Were Peterson and Ambuhl engaged in a joint enterprise so that Ambuhl's negligence, if any, in not erecting suitable flares on the highway is attributable to Peterson?

■ There can be little doubt but that the jury was justified in finding defendant negligent. They might well believe that defendant, if he had been alert and attentive to the obvious facts, would have seen the overturned car with lights shining on it from both sides; that he should have seen Edwards flagging him and attempting to warn him of the danger; that any reasonably prudent man would have slackened his speed more than did defendant upon seeing lights from another car facing him on the wrong side of the road; and that defendant's brakes did not work properly. Taking the evidence most favorable to plaintiff, as we must, clearly the jury was justified in finding defendant negligent.

■ It is clear to us that the jury was justified in finding Peterson not guilty of contributory negligence. Such holding must follow if we adhere to the rule of Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641, to this effect:

"If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then * * * the act would not be negligent at all."

Peterson had no reason to anticipate injury to himself from the position he had taken. The wrecking car was south of and between him and defendant's approaching car. A spotlight was shining on the overturned car where he was working. He knew or could see that Edwards was attempting to flag defendant down. Certainly, in view of the fact that the jury, under full instructions to which no exception was taken, found deceased not guilty of contributory negligence on this state of facts, we will not disturb that finding. The case at bar is much stronger for the view we take than is Shearer v. Puent, 166 Minn. 425, 208 N. W. 182, where the jury's finding that plaintiff was free from contributory negligence was

upheld. In that case plaintiff, in trying to right a car in the ditch, ran a chain across the highway to a pole. Defendants drove into the chain and injured plaintiff. The court upheld plaintiff's verdict. In the case at bar the jury's verdict properly concluded the question of contributory negligence.

■ We are of the opinion that Peterson and Ambuhl' were not engaged in a joint adventure or enterprise in attempting to remove this overturned car. The question of whether or not parties are engaged in a join enterprise or a joint adventure usually is one for the jury. Ward v. Meeds, 114 Minn. 18, 20, 130 N. W. 2. Here the jury, by their verdict, found that there was no joint enterprise.

In Wilson v. Maryland, 152 Minn. 506, 510, 189 N. W. 437, 439, this court said:

"To constitute a joint adventure two parties must combine their property, money, efforts, skill or knowledge in some common undertaking."

In Koplitz v. City of St. Paul, 86 Minn. 373, 375, 90 N. W. 794, 795, 58 L. R. A. 74, it is said:

"Negligence in the conduct of another will not be imputed to a party if he neither authorized such conduct, nor participated therein, nor had the right or power to control it."

In the case at bar it is clear that Peterson and the garage company owned nothing in common; that Peterson was not in the employ of the garage regularly nor for this particular occasion; that he was to get no pay for doing this work; and that he had no power to control the work or authority to direct how it should be done. As far as appears from the record, Peterson merely agreed to stop on his way home and help as a matter of accommodation. The jury found there was no joint enterprise. We affirm that finding.

Since there was no joint enterprise, it is immaterial whether Ambuhl violated the "flare statute," L. 1933, c. 252, Mason Minn. St. 1934 Supp. § 2720-54½, by not putting flares a sufficient distance each side of where he stopped his wrecking car. Even if he did violate this statute, though we do not so decide, his negligence

cannot be imputed to Peterson, since there was no joint adventure or enterprise.

We find no error in the trial court's action in allowing plaintiff to amend her complaint.

Affirmed.