# HELEN M. OXBOROUGH v. THE MURPHY TRANSFER & STORAGE COMPANY AND ANOTHER.[1]

April 18, 1935.

No. 30,269.

[1]Reported in 260 N. W. 305.

*Daggett, Redlund & Burke,* for appellant.

*Stinchfield, Mackall, Crounse, McNally & Moore* and *John M. Palmer,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff, as special administratrix of the estate of her husband, who lost his life in an automobile accident, was successful below in her action to recover damages under the death by wrongful act statute. There were two defendants, both corporate, but the only one involved here is the Murphy Transfer & Storage Company, the action having been dismissed by the court as to the other. Hereafter we shall refer to that company as defendant. At the close of the trial defendant moved for an instructed verdict. That motion being denied and plaintiff having been awarded damages by the jury's verdict, it moved for judgment notwithstanding but made no motion for new trial. This motion being denied, judgment was entered, and the appeal is from the judgment.

On November 15, 1933, at about ten o'clock at night plaintiff's intestate was driving his Chevrolet coach in a southerly direction on highway No. 52 near Fort Snelling. One of defendant's servants was operating a large truck going northerly. This highway is of concrete, 27 feet in width, flanked by dirt shoulders four or more feet in width. The pavement is divided into three distinct lanes of traffic, there being narrow strips of a tar substance clearly indicating the boundary of each lane. At the point of collision the highway is straight and level over a considerable distance both to the north and south thereof. The night was cold and the pavement slippery with frost. There was difficulty on the part of drivers in keeping frost off their windshields so as to leave an unobstructed view. The westerly lane carried southbound traffic, the easterly lane northbound, and the center lane was used, and so intended, for passing vehicles. The truck was 22 feet 10 inches in length, 8 feet in width, and weighed 8½ tons. It was equipped with a double set of hard rubber rear tires. In addition to its

own weight, it also carried a steel cable and other material weighing at least an additional ton. Immediately after the collision the front part of defendant's truck was found to extend from a point west of the black line limiting the easterly boundary of the westerly lane one and one-half to two and one-half feet. The witness Spandle, who came upon the scene immediately after the crash (he was near enough to hear it), testified: "It [the truck] occupied part of the center lane. The other part occupied the westerly lane." There is other testimony of the same or similar import. The driver of the truck on cross-examination testified as follows:

Q. "When you saw him coming, you turned to your left?

A. "I did not, I stayed in my easterly lane until he was about eight feet from me.

Q. "Did you stay there all the time?

A. "I stayed there all the time.

Q. "And when he was eight feet from you, you turned to the left?

A. "I started to turn to the left, and it happened so quick that before I traveled any to my left he crashed into the truck.

Q. "How fast were you traveling?

A. "At the time I was not going more than ten miles an hour. When I saw him swaying I slowed down.

Q. "When he was eight feet from you, you turned to your left for the first time?

A. "Yes.

Q. "The collision occurred on your left-hand side of the road, did it not?

A. "On my right-hand side of the road.

Q. "Your truck did not move any after the collision?

A. "I did not move."

The car and truck were so tied together because of the violence of the impact that it took considerable time and force to pull them apart. The witnesses are in agreement that immediately after the collision the truck was facing in a northwesterly and the Chevrolet in a southwesterly direction. Both vehicles were badly smashed, especially the Chevrolet, the entire front of which was pushed back.

Photographs of the car and truck indicate that the collision was practically a head-on affair. The witnesses for defendant were the truck driver and two others, all occupying the same seat in the truck. These men were employes of defendant. The Chevrolet, according to the testimony of these witnesses, was traveling very rapidly, estimated at between 50 and 60 miles per hour, and was being driven in a zigzag fashion, first traveling on one side of the pavement and then swaying to the other. Photographs taken after the accident (identified by competent witnesses and disclosing the spot where the cars were found after the collision) afford interesting information. There can be no question but that the evidence sustains the finding of the jury that the collision took place at or slightly to the west of the westerly edge of the center lane.

Plaintiff's intestate received such injuries that he regained only a momentary consciousness in the hospital and died less than two days after the accident. Thus the only eyewitnesses to the accident were the truck driver and his two helpers. These men had been hard at work over a period of some 16 hours unloading a heavy boiler weighing about 15 tons. One of the men testified that he felt as though he had worked two days at a stretch.

Defendant urges (1) that the evidence fails to establish negligence on its part; (2) that the evidence conclusively shows contributory negligence on the part of the deceased; and (3) that the positive evidence of the truck driver and his two assistants had overcome the presumption of law that the deceased was in the exercise of due care at the time and place of accident.

Questions for review upon this appeal are strictly limited. In Smith v. Gray Motor Co. 169 Minn. 45, 46, 210 N. W. 618, 619, the court said:

"As defendant rests upon its motion for judgment without asking for a new trial, errors at the trial, whether in the rulings or in the instructions to the jury, cannot be reviewed or considered. The only question for consideration is whether it clearly appears from the record that plaintiff is not entitled to recover." (Citing cases.) Thom v. N. P. Ry. Co. 190 Minn. 622, 252 N. W. 660; Eichler v.

Equity Farms, Inc. 194 Minn. 8, 259 N. W. 545; 3 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 5085.

Defendant made no objection to the charge, nor was any exception taken thereto. Under such circumstances, "instructions to the jury not objected to become the law of the case whether right or wrong." Smith v. Gray Motor Co. 169 Minn. 45, 47, 210 N. W. 618, 619, and cases cited. The court in its instructions to the jury said:

"The only possible theory on which any negligence can be based on the part of the driver of the Murphy truck is that the defendant operator of the Murphy truck was on the wrong side of the center of the highway. There is no positive evidence, no positive testimony in this case, that he was on the wrong side of the highway at the time the accident happened. The presumption being that the plaintiff was in the exercise of due care at the time of the accident and this being an avoidable accident, the jury may be warranted in finding that the operator of the truck was on the wrong side of the center of the highway, but this is only on the presumption that the plaintiff was in the exercise of due care."

Do the facts hereinbefore stated justify a finding of negligence on the part of defendant in view of the rule laid down by the court? The question does not concern the correctness of the court's view of the law. Rather and only the question is, assuming that the rule is right, do the facts and inferences which may be drawn therefrom justify a finding of negligence? We think they do. Not only has plaintiff the advantage of the presumption of due care on the part of her intestate at and immediately prior to the moment of the accident, but there is the further fact, amply sustained, that the accident occurred upon the westerly half of the highway. As such, if defendant's truck had remained where it belonged, on the easterly half, the accident would not have happened. Under these circumstances we think a finding of negligence is sustainable. See Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 347, 211 N. W. 580, 583, wherein the court said:

"One who loses his life in an accident is presumed to have exercised due care for his own safety. The presumption is comparable to that of right conduct. It may be overcome · by the ordinary means of proof that due care was not exercised. Klare v. Peterson, 161 Minn. 16, 200 N. W. 817; Carson v. Turrish, 140 Minn. 445, 168 N. W. 349, L. R. A. 1918F, 154. The presumption merely indicates that which may be assumed without proof. In · re Hawkins v. Kronick C. & L. Co. 157 Minn. 33, 195 N. W. 766. It may relate to one or more facts. It may support all or part of the burden that plaintiff must meet. In death cases the presumption may be stated to the jury. Carson v. Turrish, 140 Minn. 445, 168 N. W. 349, L. R. A. 1918F, 154. But its presence only takes the place of evidence that would accomplish the same purpose. As to contributory negligence, the question still remains whether the defendant has established the claim by a fair preponderance of the evidence. The presumption in no way changes the rule."

We think the question of contributory negligence was also one of fact in view of what has been stated. As has been shown, if the accident would not have happened unless defendant's truck was on the wrong side of the highway, then the negligence of plaintiff's intestate could not be said to contribute thereto as a cause.

"At the threshold of consideration lies the important fact that, on the issue of contributory negligence, defendants had the burden of proof. The presumption against contributory negligence is highly important to plaintiff unless for some reason he is denied its benefit as matter of law. He is not, simply because the evidence as a whole fails to demonstrate that decedent was negligent. The testimony of eyewitnesses might be such (it is not here) as to annul the presumption, but their mere presence is no bar to its consideration by the triers of fact. Neither number nor kind of witnesses is the test, but rather the state of the evidence when the case goes to the jury. Unless, by demonstration of physical facts or otherwise, contributory negligence then appears as matter of law, the jury takes the case upon all the evidence and all inferences

(the presumption in question is only an inference which the law permits from appropriate facts, 2 Dunnell, Minn. Dig [2 ed.] § 3431) which are reasonably to be drawn from them. 'The question of contributory negligence in such cases is always one for the jury, unless the evidence shows such negligence conclusively.' 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 2616. The cases cited in support are too numerous for further reference here." Jasinuk v. Lombard, 189 Minn. 594, 597, 250 N. W. 568, 569; Burud v. G. N. Ry. Co. 62 Minn. 243, 64 N. W. 562; Anderson v. D. & I. R. R. Co. 116 Minn. 346, 133 N. W. 805.

Of course, if we were to adopt the version of the happening of the accident as claimed by defendant's truck driver and his two assistants, it might well be that defendant's contentions in this regard are well founded. But the testimony in defendant's behalf is not conclusive; there are inconsistencies. The witnesses for defendant were its employes. They were directly involved in the accident. As such they cannot be said to be wholly disinterested. That they are interested would not prevent the operation of the rule invoked by defendant, O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430; but that circumstance may well be considered with others which we find present here tending to impeach their testimony and which we think prevent the operation of the rule invoked. The facts and circumstances are such as not to take the case out of the field of fact issues into one of law. Seitz v. Claybourne, 181 Minn. 4, 231 N. W. 714; Hawkins v. Sauby, 48 Minn. 69, 50 N. W. 1015; Thom v. N. P. Ry. Co. 190 Minn. 622, 627, 252 N. W. 660.

No complaint is or was made by defendant respecting the instruction of the court on the subject matter of emergency. The facts hereinbefore set forth might well have sustained the triers of fact had they decided the other way, but we are by no means convinced that the evidence is so utterly lacking in support of plaintiff's position that we can say as a matter of law that the finding in this respect is without support. 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7020, and cases cited in notes.

It follows that the judgment appealed from should be and hereby is affirmed.