## INTERNATIONAL–GREAT NORTHERN R. CO. v. HAWTHORNE.

### No. 1685.

Court of Civil Appeals of Texas. Waco.

Jan. 9, 1936.

Rehearing Denied Feb. 13, 1936.

Sewell, Taylor, Morris & Garwood, of Houston, and John A. Newsom, of Buffalo, for appellant.

Jones & Jones, of Marshall, and B. R. Reeves, of Palestine, for appellee.

ALEXANDER, Justice.

This is a second appeal in the same case. See Hawthorne v. International-Great Northern R. Co. (Tex.Civ.App.) 63 S.W. (2d) 243. R. M. Hawthorne sued the International-Great Northern Railroad Com-

pany to recover damages for personal injuries sustained by him while in the employment of the defendant as a fireman as the result of a head-on collision between two of the defendant's trains. The jury returned a verdict on special issues in favor of plaintiff and judgment was entered in his behalf for the sum of $25,000. The defendant appealed.

On the occasion in question a railway crew consisting of appellee as fireman and a conductor and an engineer were ordered to run an engine from Palestine to Taylor for use in interstate commerce. After said engine had left Palestine and while proceeding south between Buffalo and Jewett, a head-on collision between said engine and appellant's northbound passenger train No. 4 became apparent and appellee, in order to save his own life, leaped from his engine sustaining the injuries complained of. It is conceded that at the time of appellee's injury he was engaged in interstate commerce and that his rights are regulated by the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

It is appellee's contention that the collision was caused by the negligence of the conductor and engineer on said engine. The appellant presents a number of propositions in which it contends that the court should have given an instructed verdict in its behalf because the appellee failed to keep himself informed of the schedule of passenger train No. 4 and to remind the conductor and engineer that they were running said engine past Buffalo toward Jewett on the time of said passenger train.

The evidence shows that the engine in question with its crew left Palestine at 6:30 p. m. The engine was stopped at Oakwood for a short time for the purpose of allowing the firemen to oil it. Thereafter it proceeded south to Buffalo at the usual rate of speed of about forty-five or fifty miles per hour. Buffalo is about ten miles north of Jewett and there is no side track for the passing of trains between Buffalo and Jewett. Appellee knew this fact. Appellant's northbound passenger train No. 4 was due out of Jewett at 8:05 and was running on time. Appellee testified that he had a copy of the time-table in his possession and was required under the rules to keep familiar therewith, but that he did not actually know when train No. 4 was due to leave Jewett. Before reaching Buffalo, appellee looked at his watch and knew that it was then after 8

o'clock. The conductor occupied an improvised seat on the engine immediately in front of the fireman. Shortly before reaching Buffalo, appellee saw the conductor look at his watch and the time-table and he then thought of on-coming No. 4, but did not say anything to the conductor about it. He again thought of on-coming No. 4 when they went through Buffalo where the last side track was located, but did not mention the matter to the conductor. He testified that he was looking after the fire and keeping the engine running and assumed that the conductor was looking after the schedule. He further testified that if he had thought of it when going through Buffalo he would have known that if train No. 4 was on time there was danger of a head-on collision; that he did not look at his time-table when they were going through Buffalo because he saw the conductor looking at his time-table and comparing his watch with it; and that he relied solely and entirely on the conductor to look after the safety of the train. The collision occurred about half way between Buffalo and Jewett. The conductor explained the cause of the collision by saying that according to the schedule the passenger train was due out of Jewett at 8:05 and out of Buffalo at 8:25, and that in examining the time-table he misread it and thought that the passenger train was due out of Jewett at 8:25·instead of 8:05.

■■ The evidence shows that the employees in charge of said engine had no specific orders with reference to the passenger train in question, but that they were all experienced railway men and understood that said passenger train had the right of way and that it was their duty to clear the track for it. Each of them had in his possession a time-table showing the schedule of the passenger train and was required to be familiar with its contents. Under the rules of the railway company, the general direction and government of a train is vested in the conductor. He is responsible for its safe and proper conduct and all other employees on the train are required to yield a willing obedience to his orders. The engineer is likewise charged with responsibility of the train and the observance of the rules for its protection. Firemen are required to familiarize themselves with train schedules, to carefully read train orders, keep them in mind, and assist in their observance. It is the fireman's duty to call attention of the conduc-·

tor or engineer immediately to any failure to observe train orders or to comply with the rules and instructions, and in cases where the safety of the train and observance of rules or orders are involved, the fireman is held responsible to the extent of his ability to prevent accidents or violation of rules.

The jury found that the conductor and engineer were guilty of negligence proximately causing said engine to collide with the passenger train, and that the appellee was not guilty of any contributory negligence. On the former appeal, we held that the evidence was not sufficient to establish as a matter of law that appellee was guilty of any contributory negligence which was the sole cause of the collision, and that the trial court improperly refused to submit these matters to the jury. The evidence on the last trial was not materially different from that introduced at the former hearing and for the reasons stated in our former opinion, we hold that the evidence was sufficient to raise a question of fact for the jury and that the trial court properly overruled appellant's request for an instructed verdict. For the same reasons, we overrule appellant's contention that the trial court should have given an instructed verdict for appellant on the theory that the appellee assumed the risk of being injured under circumstances such as are here involved. These questions were all thoroughly discussed in the former opinion and we do not deem it necessary to again discuss the authorities applicable thereto.

The appellee alleged that "the locomotive on which plaintiff was so traveling was, through the negligence and carelessness of the defendant, brought into collision with the locomotive or train traveling in the opposite direction in that defendant negligently and carelessly permitted two locomotives traveling in opposite directions to occupy the same track at the same time, thereby bringing about a collision." Appellee further alleged that said engine was in charge of the conductor and engineer and that they "did so operate said locomotive as to bring the same into collision with another locomotive moving in the opposite direction as a proximate result of one or all of the following acts of negligence:"

(a) Said employees negligently failed to observe the regulations governing the operation of trains;

(b) Said employees negligently operated said locomotive past the last station north of the point of collision at such a time that it could not reach the next station in time to avoid the collision;

(c) That said employees negligently failed to observe the time card and negligently misread and misinterpreted the same, thereby causing the locomotive to be on the main line at the time the passenger train was due to pass.

The court submitted but one issue as to appellant's negligence, which issue was as follows:

"Do you find from a preponderance of the evidence that the engineer and conductor on the southbound train were guilty of negligence in causing the trains to be brought together?"

To which the jury answered, "Yes."

The appellant objected to said issue as follows:

"And the defendant further excepts and objects to said special issue because the same is too general and is not responsive to the pleadings in that the plaintiff has pleaded specific acts of negligence in their petition as to the conductor and engineer, and the submission of said special issue in the form in which it appears in the court's charge would allow the jury to take into consideration acts of negligence other than those specifically pleaded in plaintiff's petition."

The appellant here assigns as error the giving of the above-quoted issue and contends that the issue was too general and allowed the jury to take into consideration acts of negligence other than those specifically pleaded by appellee.

We have had considerable difficulty in deciding the question presented, but, after careful consideration, have concluded that the assignment should be overruled. We recognize it as a well-settled rule, as contended by appellant, that where a plaintiff has alleged negligence generally followed by allegations of more specific acts of negligence, the latter will control, and it is the duty of the trial court to segregate and separately submit each act of negligence raised by the pleadings and supported by the evidence; and, under such circumstances, it is reversible error to submit the issue of negligence in general terms over the objection of the opposite party. 30 Tex.Jur. 841; Dallas Railway & Terminal Co. v. Boland (Tex.Civ.App.) 53 S.W.(2d) 158; Panhandle & Santa Fe Ry. Co. v. Miller (Tex.Civ.App.) 44 S.W.

(2d) 790; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S.W. 517; Butler v. Herring (Tex.Civ.App.) 34 S.W.(2d) 307, and authorities there cited. However, in our opinion the above rule has no application in this case, for it is a well-established rule that in submitting a case to the jury it is only the independent ultimate facts which go to make up the cause of action or the defense thereto that are required to be submitted to the jury. Texas City Transp. Co. v. Winters (Tex.Com.App.) 222 S.W. 541. Here the appellee alleged that the appellant and its agents were guilty of negligence in causing the two trains to be brought together in a collision. Admittedly, appellant's agents caused the trains to be brought together. It was not charged that any of its agents other than the engineer and conductor were negligent. Causing the trains to be brought together was the ultimate act of negligence complained of. It was the one thing that the conductor and engineer did which they should not have done and which proximately and directly brought about the situation where it was necessary for appellee to jump for his life. Whether or not they were negligent in doing so was the ultimate issue for the jury. It is true, it was alleged that the conductor negligently misread or misinterpreted the time card, but this was not the ultimate act of the conductor that caused appellee's damages. If he had not brought the trains together, his failure to correctly read the time card would have been immaterial. Proof of the misreading of the time card furnished evidence of the mental reaction which prompted the conductor to commit the deed complained of, but we are not concerned with his motive. It was also alleged that said employees failed to observe the rules of the company, failed to observe the schedule of the passenger train as shown by the time card, and failed to stop the engine at Buffalo when they should have done so, but these were mere allegations of things that said employees could have done instead of doing the thing complained of—causing the trains to be brought together. They were mere evidentiary matters tending to show that the conductor and engineer were not obliged to cause said trains to collide and to establish that in causing said trains to be brought together they did a thing that an ordinarily prudent person would not have done, and hence were negligent in doing so. The charge was not subject to the objection that it was a general submission of appellant's negligence. It submitted a single independent act—the act of bringing the trains together—which act caused the dangerous situation complained of by appellee.

By propositions 17 to 23, inclusive, the appellant complains of the failure of the court to submit to the jury several specially requested issues inquiring in various ways whether or not the appellee was negligent in failing to warn the conductor that he was running the engine in question past Buffalo on the time of said regular passenger train and whether or not such negligence was the sole cause of the collision. These matters were all submitted to the jury in the court's main charge and the jury found adversely to appellant's contention. These assignments are overruled.

Appellant complains of misconduct of the jury. There is evidence to the effect that after the jury retired to consider the verdict, one of the jurors stated in the presence of some of the other jurors that appellee would have to pay attorney's fees, but the record is not clear whether the juror said, as contended by appellant, that the attorney's fee would have to be paid out of the amount recovered. The record is clear, however, that the foreman and other jurors spoke up immediately and admonished the juror who had made the statement that the jury had nothing to do with attorney's fees and that they should not discuss such matters. There was no further reference by any of the jurors to attorney's fees. There is nothing to show that the verdict was in anywise influenced by the reference to attorney's fees. Under the circumstances, the evidence does not present such misconduct of the jury as requires a reversal of the judgment of the lower court. Bradley v. Texas & P. Ry. Co. (Tex.Com.App.) 1 S.W.(2d) 861.

Lastly, appellant contends that the judgment of $25,000 is excessive. The evidence shows that the appellee was twenty-eight years of age at the time of his injury and was earning approximately $175 per month. He was in good health prior to his injury and had a life expectancy of thirty-three years. As a result of the accident, the appellee was severely injured in the shoulder and in his legs and particularly in his knees. The ligaments and muscles in his shoulder were injured and at the time of the trial, four years after the injury, he did not have the full use of his right hand. His left knee pained him for

approximately three years after his injury. His right knee has never gotten well and he still suffers pain therein. His right knee sometimes locks when he steps into a depression and it is necessary for him to have the knee massaged before it can be unlocked and he is required to remain in bed for several weeks after such spells. He was wholly unable to labor for a period of two years after his injury and for the next two years thereafter up to the time of the trial he was able to hold only a light position at the post office, paying $21 per month. It is apparent from the record that his earning capacity in the future has been materially reduced and that he will continue to suffer pain possibly for the remainder of his natural life. Under the circumstances, we cannot say that the verdict is so excessive as a matter of law as to require a reversal of the judgment. American Nat. Ins. Co. v. Denke (Tex. Civ.App.) 65 S.W.(2d) 522, and authorities there cited.

We have very carefully considered all other assignments and find no reversible error.

The judgment of the trial court is affirmed.