## HENRY NARJES v. CHARLES M. LITZAU.[1]

December 31, 1942.

No. 33,321.

[1]Reported in 7 N. W. (2d) 312.

*Freeman & King* and *E. John Abdo,* for appellant.
*Joseph P. O'Hara,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff's negligence action resulted in a verdict for him. Defendant's motion for judgment notwithstanding was denied, judgment in conformity with the verdict entered, and he appeals from the judgment. There was no motion for new trial.

Defendant is a farmer. His large and commodious barn, 34 feet wide and 64 feet long, was in need of improvement and repair. This required the loosening and removal of a considerable amount of old bricks and stones therein. His Ford truck was used to haul away the stuff. The barn has within it a driveway or alleyway some eight feet in width, flanked by gutters such as are usually found in barns like this one. The entrance is from the east, the driveway extending due west the full length of the barn. There are double doors at each end approximately the same width as the driveway. The east end faces the farmyard, and to the west is the cattle yard.

On the day of the accident plaintiff and one Dittmer were employed by defendant to assist him in breaking loose the old material and shoveling and pitching it into defendant's Ford truck

box. There are stalls and stanchions on each side of the alleyway. The truck was brought in through the east door and was facing west. The day was windy, and it was thought best not to use the west door. Instead, the truck was backed out through the east door, then swung to the north, and thence forward, or south, to the place where the load was dumped just around the southeast corner of the barn. The first load was so handled, with plaintiff and defendant doing the unloading. The next load was taken out and removed while plaintiff was away on an errand to town to get some material with which to build forms in which to lay concrete. When he came back shortly thereafter the truck was already in the barn for its third load. He proceeded at once to help load it. Dittmer's job was to pry loose the old brick and stone, while plaintiff and defendant did most of the shoveling into the truck box. When the loading was finished, plaintiff was at the easterly end, *i. e.,* toward the rear of the truck, defendant next in line, and Dittmer farthest to the west, where he was working with a pinch bar prying the stuff loose. Plaintiff proceeded toward the east door, on the north side of the truck, as he had done when the first load was brought out, walking in the alleyway toward the entrance. Defendant went around to the front of the truck and entered from the left-hand side. He started the motor at once and proceeded to back the truck toward the east door. The distance from the rear end of the truck to the east door was about 30 feet. As plaintiff was about four feet from the door and just about to step across the sill, he looked back, having heard the motor start. He was struck down by the rear end of the oncoming truck and sustained very severe injuries. He testified that it all happened very suddenly. The inference is that in backing out it was necessary to give the engine more gas to get the car over the hump or rise of six or more inches at the inner side of the sill under the east door. There was no signal given, only the noise of the motor, although defendant knew that plaintiff would likely be behind him somewhere in or on the alleyway. Defendant's chief

concern seems to have been to avoid colliding with the door jamb, as the space was narrow. Thus proceeding, he held open the truck door to his left, but in so doing he failed to observe that plaintiff was in a place of danger.

Plaintiff testified that at this crucial moment he thought he had time enough to cross the doorsill and get to the south side of the door before the truck came through. He did not think that the truck "was coming that fast" at the moment, and for that reason took the step across the sill. "I was going to get across quick to the other side, to the south side" of the driveway. He was bumped twice, first as the rear wheels came over the sill, and next when the front wheels reached that point. He was pinned beneath the truck under the differential in a way that rendered him helpless. One leg was fractured. Dittmer and defendant did their best to jack up the truck to relieve him, but this took perhaps half an hour. During this time plaintiff said, in response to some remark by defendant:

"Q. And you [plaintiff] remember telling him, Henry, that you were in a hurry and you guessed it was as much your fault as it was his?

"A. That is what I said."

This testimony has been seized upon by defendant as conclusive proof that plaintiff was guilty of contributory negligence as a matter of law, and he contends that this admission, together with the other facts related, compels a finding to that effect. Defendant devotes practically his entire brief to this point.

■ The scope of our review in situations such as this lies within narrow limits. We had occasion in Thom v. N. P. Ry. Co. 190 Minn. 622, 627, 252 N. W. 660, to review our prior cases and to restate the applicable rule. It is this:

"The view of the evidence most favorable to plaintiff must be accepted. The judgment will not be reversed even though the evidence was such that the trial court in its discretion ought to have granted a new trial; it must be clear from the whole record that

the moving party, as a matter of law, was entitled to judgment on the merits [citing cases]. In other words, the evidence must be so conclusive as to compel, as a matter of law, a contrary result [citing cases]." 3 Dunnell, Dig. & Supp. § 5085.

■ The time, place, and circumstances are important factors to be considered. We are not concerned with traffic rules applicable to streets and highways. The accident happened in a barn. A jury drawn from a rural county heard and determined the facts. No class of jurors would be more likely to correctly appraise and give effect to the conduct of the parties and appropriately apply to them the standard of conduct of the ordinarily prudent man. Perhaps the result bespeaks what is sometimes derisively labeled "barnyard justice." Well, so let it be. We should not forget that that is where the accident occurred. "Barnyard justice," or whatever else it may be called, having met the requirements of the standard of conduct of the ordinarily prudent person, we cannot say that the jury went wrong. Here, as in Meisch v. Safranski, 147 Minn. 122, 124, 179 N. W. 685, 686, "the jury applied its practical knowledge of farming and probably reached a fair result." That was said in reference to damages for failing to fall-plow land. We think the remark equally applicable to the removal of rubbish from a barn.

Judgment affirmed.