## ALLISON v. McCARTHY et al.

No. 6635. Decided April 12, 1944. (147 P. 2d 870.)

Rehearing denied June 16, 1944.

See. 5 C. J. S. Appeal and Error, sec. 1650. 35 Am. Jur., 823.

*Farnsworth & Van Cott, Grant H. Bagley,* and *E. C. Jensen,* all of Salt Lake City, for appellants.

*Rawlings, Wallace & Black,* of Salt Lake City, for respondent.

WADE, Justice.

This is an appeal by the Denver & Rio Grande Western Railroad Company, a corporation, and its trustees, Wilson McCarthy and Henry Swan, from a judgment in favor of Riley L. Allison, respondent herein, in the sum of $30,000, for personal injuries sustained by him as a result of a collision between track cars, while in the employ of appellants.

On July 19, 1941, the date of the accident, respondent who was employed as a helper in the bridges and building department of appellants, had been with a crew which was repairing structures on the railroad right of way near the Hanging Bridge in the Royal Gorge Canyon.

The facts of this case bring it within the provisions of the Federal Employers' Liability Act, 45 U. S. C. A. § 51, which provides that:

"Every common carrier by railroad while engaging in commerce between any of the several States * * *, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * *."

Section 53 of 45 U. S. C. A. provides that:

"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, * * * the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee * * *."

The accident occurred when the crew with which respondent was working was on the way back to its quarters at Spikebuck, which is about nine miles west of Hanging Bridge. The crew had loaded its paraphernalia onto its track car and trailer about 4 or 4:10 p.m. and had started back so as to be able to reach Spikebuck about 4:30 p.m., which was quitting time. The track car was propelled by a gasoline motor, the seats arranged so that the driver sat at the rear end and the rest of the crew sat on seats arranged lengthwise on each side of the car. Respondent sat on the

front end on the left-hand side. The seats were not assigned but those who sat on the front were given flags to be used in signaling traffic on the line. A safety rule of appellants introduced in evidence provided that

"(b) Employees will see that their track cars are clear of the main track for all trains. Track cars must be operated with the expectation of finding the main track in use, and care exercised to avoid striking other track cars. When view is restricted car must be protected by flag. They must expect that on double track trains and engines will be operated against the current of traffic without notice."

Appellants argue very strenuously that the rule was violated by respondent and that he was therefore guilty of contributory negligence as a matter of law and therefore the verdict of the jury in failing to diminish the damages was against the law.

The evidence discloses that the accident occurred a short distance west of Sample, a passing track. Sample is approximately 1½ miles west of the Hanging Bridge. Appellants' track as it proceeds westward is located in a canyon known as the Royal Gorge. In this canyon there are sharp blind curves which restrict the view of trains or cars coming around them. There was such a curve at the site of the accident.

About ten minutes prior to the time respondent started back with the crew for Spikebuck, one Perkins was seen travelling in a westerly direction in his track car, following a work train. Perkins was a track patrolman and respondent and his foreman, Arco, both knew that it was one of his duties to go ahead of trains and inspect the tracks. Arco had been told by one of the members of the work train that a westbound extra freight train was expected on the track and that the work train was going to move into Sample to allow this train to pass. Before reaching Sample, Arco, stopped his track car at a place where the view was restricted and requested respondent to get off and flag the car. This respondent did by going ahead with a flag, and upon finding the track clear they proceeded on their way. Although the view was also restricted, Arco did not stop the car nor did

he request respondent to flag it before he proceeded around the curve at which the accident occurred. Arco testified that he was in charge of the crew; in physical control of the car and that he was the one who determined when the car was to be stopped and flagged. Just before Arco started the car around the curve, respondent stood up in his seat and leaning as far out as he could, extended the flag which he carried as far to the left as possible. This was done for the purpose of warning any oncoming traffic of the presence of his car. Respondent saw Perkins coming in his car when the two cars were about 150 or 175 feet apart. He shouted a warning to Arco, who immediately applied his brakes. Here the evidence was conflicting, but the jury could have found that neither Arco nor Perkins were able to stop their cars in time to avoid a collision. Respondent jumped off the car just before it collided with Perkins' car. Both cars were nearly stopped at the time but the impact was sufficient to explode some torpedoes carried by Perkins in a metal box. Respondent was injured by a piece of metal from this box which was driven into his leg. Perkins testified that he did not stop or flag his car as he came around the blind curve although he was aware that he might meet Arco's car going west as he was travelling east. From the above facts the jury could well have found that appellants' employees, Perkins and Arco, were both guilty of negligence.

Was respondent guilty of contributory negligence as a matter of law? In order to be guilty of negligence as a matter of law the evidence must be undisputed and the facts must not be conflicted and must clearly prove that he acted in a manner in which a reasonably prudent person would not have acted under the circumstances, or that he failed to act in such a manner as a reasonably prudent person would have acted under the circumstances. As stated in *Miller* v. *Southern Pacific Co.*, 82 Utah 46, 21 P. 2d 865, on page 871:

"Negligence is a resultant either from an act in violation of a duty or in failing to act when duty under the exigencies of the occasion requires one to act."

The evidence was not entirely clear what was meant by that portion of the safety rule which reads:

"When view is restricted car must be protected by flag."

Arco testified that it meant to him that the car must be stopped and a man sent ahead with a flag. Respondent testified that he used the flag with which he was provided for the purpose of warning other cars of their presence and that he did not use it, nor had he been instructed to use it, to signal his foreman to slow up or stop. From this it can hardly be said there is sufficient evidence from which a court could find as a matter of law that respondent had violated a safety rule of appellants and that this violation was negligence. Respondent did use his flag when the car proceeded around the curve at which the view was restricted and in view of the fact that he was a mere assistant under the supervision and direction of his foreman, and also in view of the uncontradicted testimony that his foreman, who was in physical control of the car, made the decisions whether or not the car should be stopped or at what rate of speed it should be operated, it was clearly a question for the jury whether the safety rule of appellants had been violated by respondent and whether or not he was guilty of contributory negligence because of such violation, if any. The following cases are in harmony with the viewpoint that whether or not a violation of a safety rule constitutes negligence as a matter of law or is a question for the jury depends upon the facts and circumstances of each case. *St. Louis I. M. & S. Ry.* v. *Steel,* 129 Ark. 520, 197 S. W. 288; *Rocco* v. *Lehigh Valley R. Co.,* 288 U. S. 275, 53 S. Ct. 343, 77 L. Ed. 743; *Wilson* v. *Chicago B. & Q. R. Co.,* 317 Mo. 647, 296 S. W. 1017; *Thcm* v. *Northern Pac. R. Co.,* 190 Minn. 622, 252 N. W. 660; *International-Great Northern R. Co.* v. *Hawtherne,* Tex. Civ. App., 90 S. W. 2d 895; *Shepard* v. *Payne,* 60 Utah 140, 206 P. 1098. From the form of the jury's verdict in failing to deduct for contributory negligence, although they were instructed to do so should they find that respondent was guilty of contributory negligence, it is clear

that the jury found that respondent was not guilty of contributory negligence, or if he was, that no substantial amount should be deducted therefore under the facts and circumstances of this case. *Union P. R. Co.* v. *Hadley,* 246 U. S. 330, 38 S. Ct. 318, 60 L. Ed. 751.

Appellants contend that the jury's verdict assessing respondent's damages at $30,000 is excessive.

Respondent was 30 years of age at the time of the accident. The injury he sustained necessitated the amputation of his leg about two inches below the knee. He was in the hospital until sometime after Thanksgiving. While in the hospital he was subjected to two further operations to enable them to get more cushion for the end of the stump. After leaving the hospital he obtained an artificial leg but up to the time of the trial he had not found it satisfactory. He had not been able to walk on it for any length of time and when he attempted to do so, blisters would form. He was unable to walk up any incline or walk down any stairs. He has suffered considerable pain. There was medical testimony to the effect that an amputation two inches below the knee is a very poor point on the leg for the purpose of fitting an artificial limb because not enough cushion can be produced, the bone is too close to the skin and hampers mobility and it is apt to crack where the weight is borne on it.

At the time of the accident respondent's earning power was approximately $120 per month. He had worked for the railroad company for about five years. During the first years of his employment with the company he worked relatively short periods of time during the year. This was explained as due to a railroad custom or rule of seniority, i. e., work which is available is given to employees who have been longest in the employ of the company; those who have been employed for the shortest period of time are the first to be "laid off" when work is unavailable for all. Commencing January 9, 1941, respondent had worked every working day of that year up until the occurrence of the accident. Since the accident and up until the time of the trial, re-

spondent had been unable to work at anything for which he was qualified.

There was competent evidence from which a jury could find that respondent's lifetime expectancy is 35 years and that the present worth of an income of $120 per month discounted at 4% is $27,950.40; at 3% is $31,867.20. There was evidence that an ordinarily prudent person, without particular experience in the investment field, could safely make investments in which the returns were not more than 3%. Those paying more were either not available to small investors or were not considered as safe.

From the foregoing facts can it be said that the verdict is so excessive that it is unjust? As this court has said in *Miller* v. *Southern Pac. Co.*, 82 Utah 46, 21 P. 2d 865, at page 879:

"This court is not wholly powerless to grant relief if it should indubitably appear that the jurors erred in their judgment as to the amount of damages."

This court, however, will not substitute its judgment for that of the jury and the trial court who were in a better position to observe the witnesses and injuries than we are, unless the record clearly indicates the presence of bias, prejudice, passion or misunderstanding on the part of the jury in arriving at its verdict. In our opinion the record in the instant case does not so indicate.

Appellants have assigned as errors the failure of the court to give their requested instruction No. 5, and the giving by the court of its instructions numbers 7 and 8.

Appellants' instruction No. 5 which the court refused to give, reads as follows:

"Even should you find from the evidence that defendant Trustees were negligent, if you further find that prior to the happening of the accident plaintiff had knowledge of such negligence, with full opportunity to avoid injury, and was himself guilty of negligence which was the proximate cause of the accident and that a person of like knowledge and intelligence in the same situation and under the same surrounding facts and circumstances as those present on the occasion of the accident would and should have avoided it by exercising

ordinary care for his own safety, you should render a verdict of no cause of action in favor of said Trustees and against plaintiff."

Appellants argue that respondent by his testimony showed he heard Perkins' car before he saw it, and therefore if he had warned Arco at the time he heard it instead of waiting until he saw it the accident would never have occurred. It is their contention that it was respondent's negligence in failing to give timely warning which was the proximate cause of the injury.

The court did not err in refusing to give this instruction because as we have shown the evidence in this case would not warrant a finding that respondent's negligence, if any, was the sole proximate cause of the injury. He was not in a position of authority, nor did he have physical control of the car. The evidence did not conclusively show that he heard Perkins' car before he saw it. Respondent's testimony in respect to this is as follows:

"Q. What happened? A. As we went around the curve I heard Mr. Perkins coming from the west on the motor car.

"You may state whether or not you did anythig as the cars in which you were riding approached the curve? A. As I was riding on the left side, naturally I could see further, so I stepped out with the flag in my hand and held it out. As we went around the curve I was looking as far there as I could, and when I saw Mr. Perkins I hollered, and saw Mr. Arco put on the brakes and saw the car tip. Then they collided."

There was evidence that the cars while being operated made a great deal of noise, and that river running near the tracks also made a great deal of noise. Under these circumstances it cannot be said that from the above testimony it is clear that respondent heard Perkins' car ■ before he saw it. As a reading of the testimony readily discloses he testified he heard Perkins' car as they came around the curve and that when he saw Perkins' car he hollered. There is no testimony as to what length of time, if any, passed between the time he heard and the time he saw the car. A reasonable inference is that because of the

noise made by the cars and the river, he both heard and saw the car at approximately the same time. It would have been error under this state of facts for the court to have given appellants' requested instruction.

The court's instructions numbers 7 and 8 read as follows:

Instruction No. 7:

"You are instructed that if you find the plaintiff is entitled to recover, you may award him such damages not exceeding the sum of $75,000.00 as in your opinion will compensate him for the pecuniary damages to have been sustained by him and proximately caused him by the wrong complained of; and in estimating the amount of such damages you may consider the physical and mental pain suffered, if any, the nature, extent and severity of his injury or injuries, if any, the extent, degree and character of suffering, mental or physical, if any, its duration and its severity, and the loss of wages and future earnings and impairment of earning capacity, if any, his loss of power and capacity to work, if any, and its effect upon his future.

"You may also consider whether the injury was temporary in its nature or is permanent in its character, and from all these elements you will resolve what sum will fairly compensate the plaintiff for the injury sustained."

Instruction No. 8:

"You are instructed that in considering the element of the loss of wages and future earnings, if any, which plaintiff may sustain in the future on account of the loss of his leg, may you first consider and determine from the evidence plaintiff's expectancy of life; and second, ascertain and determine from the evidence the loss or impairment of plaintiff's earning power, if any, resulting from his injury, and third, ascertain and determine from the evidence what interest could be fairly expected from safe investments which a person of ordinary prudence, but without particular financial experience or skill, could make.

"You are further instructed that the loss of income which plaintiff may sustain in the future on account of the loss of his leg must be figured on the basis of the present value of a yearly income equivalent to the probable reduction of plaintiff's earnings, and if you shall find and believe from the evidence that plaintiff has suffered a loss and impairment of earning power resulting from his injuries, and that said injuries were caused by the negligence of the defendants as in these instructions explained, he would be entitled to receive as compensation for such loss and impairment of future earning power, the

value or equivalent of said loss and impairment of earning power if paid now in a lump sum by the defendants in advance instead of being earned and received in monthly installments during the remaining years of his life, figured on the basis of the interest rate which you shall determine as in these instructions hereinabove set forth."

These same instructions were considered by this court in the case of *Bruner* v. *McCarthy et al.,* 105 Utah 399, 142 P. 2d 649. It was there argued as it is in the present case, that these instructions were erroneous because they authorized the jury to award double recovery. We said in the Bruner case at page 654 in the Pacific reporter, that

"the instructions when taken together are not susceptible of the interpretation contended for by the defendants. While they are not letter perfect, we do not believe that there was prejudicial error in this regard."

It would serve no good purpose to review in this case our reasons for so holding, but we wish to make it understood at this time that we do not approve the giving of instructions which are complex and which may be diffcult to understand by the average juryman. Instructions should be clear, concise, simple and not redundant. We do not believe the above instructions conform to these standards. We want it clearly understood that because we have found that the giving of these instructions was not such error as to require reversal, it is not to be interpreted that they are approved by this court.

Judgment affirmed. Costs to respondents.

WOLFE, C. J., and LARSON and McDONOUGH, JJ., concur.

MOFFAT, J., participated in the hearing, but died before the publication of the opinion.