# DALE JOHN FORSETH v. DULUTH-SUPERIOR TRANSIT COMPANY.[1]

April 8, 1938.

No. 31,557.

[1]Reported in 278 N. W. 904.

*G. A. E. Finlayson,* for appellant.
*Jenswold & Dahle,* for respondent.

Holt, Justice.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

The action was for damages sustained by plaintiff, a boy a few days under six years of age, when an electrically operated bus, through the alleged negligence of defendant's driver, struck the boy on Piedmont avenue, in West Duluth, crushing his left leg so that it had to be amputated a couple of inches below the knee. Defendant operates streetcars and buses in Duluth by means of electric power. Such a bus runs on Superior street, which extends generally in an easterly and westerly direction the whole length of the city. From about Thirteenth avenue west to Sixteenth avenue west, Superior street runs in a southwesterly direction, and somewhere between those avenues Piedmont avenue branches off from Superior street in a westerly direction crossing First street at an angle of about 45 degrees. The grade of Piedmont avenue as it passes from Superior street to First street rises about 7.5 per cent; as it traverses First street it is level; then, going west, the grade rises from 4 to 5 per cent. The width of the avenue from curb to curb is 40 feet. It is paved with concrete cement. On the north side is a four-foot boulevard and then a six-foot sidewalk, and on

the south side is a two-foot boulevard and then an eight-foot side-walk. From the northerly curb line of First street extended across Piedmont avenue there is an electric trolley pole on the north boulevard 105 feet west from such extended curb line, designated herein as trolley pole No. 105; and directly south thereof a corresponding trolley pole on the southerly boulevard, 65 feet west of said extended curb line, designated herein as trolley pole No. 106. Shortly after three o'clock in the afternoon of October 31, 1936, Carl H. Buness drove defendant's electric bus westerly on Superior street in Duluth. The bus was a Brill model, weighing about nine and a half tons, and, when reaching Piedmont avenue, it had about 25 passengers. It turned west on Piedmont avenue crossing First street, and, as it crossed or had crossed the latter street, plaintiff attempted to cross Piedmont avenue from the northerly curb thereof a few feet east of pole No. 105, going diagonally toward Dunleavy's store, located a few feet east of trolley pole No. 106. He was running. The witnesses varied as to his speed from "jogging" along at five miles an hour to "dashing out." Some thought he changed his course from southeasterly to southwesterly as he noticed the oncoming bus. When Buness saw the boy he realized the impending peril and promptly applied both the foot airbrakes and the hand emergency brakes; however, the left front corner struck the boy, tossing him some five or six feet ahead, but before the bus could be stopped his left leg was caught under the left wheel and crushed. The boy was dragged some five or six feet, the flesh and blood leaving a distinct mark on the pavement where the wheel slid after contacting the leg. The witness Johnson was perhaps in a better position to view what occurred than any other witness. He was looking out of a window above the Dunleavy store and first noticed the boy coming easterly on the northerly sidewalk, then, after passing trolley pole No. 105 a few feet, saw him turn directly across the boulevard and off the curb, heading for Dunleavy's store. Johnson testified that as the boy stepped from the curb into the street the bus was from 35 to 40 feet easterly of that point. Mr. Buness, on the other hand, testified that when he first saw the boy he came out from in front of a parked car some 10 or 12 feet west of the

450

bus. So an important fact in the trial was whether there was an automobile parked along the north curb of Piedmont avenue a few feet east of trolley pole No. 105 that obstructed Buness' view of the boy as he stepped into the street. The evidence is far from satisfactory on that proposition. A witness called by defendant, a passenger in the bus, seated on the right front long seat, and not in as favorable a position to see the boy as he stepped from the curb as was Buness, if a parked automobile intervened, testified positively that she saw the boy as he "dashed" from the curb right in front of the bus. She was unable to estimate the distance between him and the bus as he left the curb. This must suffice for an understanding of the questions raised by the appeal. We go directly to the main assignments of error, viz.:

That the court erred in refusing to direct a verdict for defendant and in denying judgment notwithstanding the verdict. The complaint merely alleged that Buness so carelessly and negligently drove defendant's bus that it ran into, struck down, and injured plaintiff at the intersection of First street and Piedmont avenue. Defendant by the answer admitted that plaintiff came in contact with the bus and sustained certain injuries as a result thereof, but denied that such injuries were the proximate result of any negligence on the part of defendant, and alleged that they were the result of an accident for which no one was to blame, and further averred that if any negligence was connected with the accident it was due to the negligence of those having the custody of plaintiff, and that their negligence contributed to cause the injuries. It is thus seen that the main issue as made by the pleadings was whether plaintiff was injured because of negligent operation of the bus or whether the contact of the bus was an accident that the driver of the bus in the exercise of due care could not avoid. As the evidence developed the trial court concluded that there was only one item of negligence on the part of Buness to go to the jury, and that was whether or not he kept a proper lookout ahead. Every operator of a vehicle on a public street has to keep a lookout ahead so as to avoid running into other users of the street. The more speedy and powerful the vehicle the more vigilant must be its operator to keep

a lookout ahead for objects likely to come in its path. The rapidity with which the vehicle may be stopped, the condition of the street, the likelihood of persons or vehicles coming unexpectedly in its way are all matters which call for a commensurate degree of care in keeping a proper lookout. In residence portions of our cities children of tender years are apt to run out into the street without regard to ordinary crossings. They have no conception of the right of way or knowledge of legal regulations of traffic, and so the drivers of vehicles have to use due care for their safety. Weasler v. Murphy T. & S. Co. 167 Minn. 211, 208 N. W. 657. We think the evidence here in respect to the distance between the bus and plaintiff, when he left the curb for the street, was such that it must be left to the jury to determine whether or not a proper outlook by the driver would have disclosed that situation to him in time to have avoided the impact. It seems to us the evidence as to the distance between the boy and bus as the former left the curb; as to whether he "jogged" into the street at a speed of about five miles an hour, as witness Johnson says, or "dashed" into the street; and as to whether any parked car interfered with the view ahead of Buness are matters for the jury to solve, and the court did not err in refusing to direct a verdict or grant judgment *non obstante.*

Defendant assigns error on the refusal of the court to give the jury the last sentence of 1 Mason Minn. St. 1927, § 2720-43, with respect to brakes. It is enough to say that there was no evidence directed to any fault of the brakes. Indeed, it may be said that no negligence either as to the condition of the brakes or the manner of their use on the occasion of the accident was suggested by the evidence nor submitted by the court.

Error is assigned upon this sentence in the charge: "The question, therefore, that you must determine from the evidence is whether or not the defendant's motorman was negligent." It is argued that this set at large any act or omission of negligence that the jury might infer from the evidence. The quoted sentence occurred in the charge after the court had thus stated the issue tried:

"The plaintiff, however, claims that the defendant's operator was negligent. He claims he was negligent in one specific respect. He claims that the operator was negligent in failing to exercise reasonable and ordinary care in keeping a reasonable lookout ahead. It was the duty of the defendant's operator to use ordinary care, that is, such care as a person of ordinary care and prudence would use under the same or similar circumstances, in keeping a reasonable lookout ahead for vehicles and pedestrians ahead of him so as to take proper precautions to avoid accidents. If the defendant's operator exercised ordinary or reasonable care in keeping a reasonable lookout ahead he was not negligent. If the defendant's operator failed to exercise ordinary or reasonable care in keeping a reasonable lookout ahead he was negligent. In considering the negligence of the defendant's motorman or operator, the motorman had a right to assume, at least until the contrary appeared, that no one would come into the path of the moving trolley bus so closely in front of it that a collision therewith could not be avoided."

And in that connection 1 Mason Minn. St. 1927, § 2720-18(c), was read to the jury (as requested by defendant) relating to the right of way as between vehicles and pedestrians on public streets. We think it perfectly clear that any reference to defendant's negligence in the subsequent part of the charge must have been understood by the jury as limited to negligence in failing to keep a proper lookout. No other item of negligence was mentioned in the charge; and that the court intended to submit none other is indicated by the manner in which this request of defendant to charge was modified as italicized:

"If you find from the evidence in this case that the plaintiff, Dale Forseth, came into the path of the moving trolley bus so closely in front of it that a collision therewith could not be avoided by the operator of the bus *in the exercise of ordinary care in keeping a reasonable lookout ahead,* your verdict must be for the defendant."

The sentence upon which the assignment of error is based was used in directing the jury to determine whether the negligence found was the proximate cause of plaintiff's injury. No one can read

this record without concluding that Buness could not be charged with any negligence other than that in respect to a proper lookout ahead. After he saw plaintiff's peril he did all that was humanly possible to avert injury. The negligence found was in not sooner seeing the peril of the boy.

The matter in the charge that is somewhat troublesome is a statement that plaintiff "by reason of his tender years * * * was not guilty of contributory negligence." This court is committed to the rule that a child under seven years may be charged with contributory negligence in an action to recover for personal injuries. Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1, reviews our former cases on that subject and states our preference for the Massachusetts rule as against that obtaining in Illinois. Under our practice, contributory negligence is a defense which a defendant has the burden of establishing. Of course, if made out from plaintiff's proof, defendant may take advantage thereof without pleading it as a defense. 4 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 7060, and cases cited in note 56. But for a defendant to plead such a defense, or even to suggest it to a jury in the case of an injured child of plaintiff's age, is of doubtful expediency. Here defendant wisely, we think, refrained from pleading or presenting any contributory negligence of plaintiff. It pleaded it as to those having the custody of plaintiff. However, the only proof as to that matter was that the parents were working away from home, and plaintiff and his two brothers, 8 and 11 years of age, were left in charge of their 73-year old grandfather. The father testified that the home had been within half a block of the place of the accident since 1925; that he had warned the boy of the danger of crossing Piedmont avenue; and that the boy had attended kindergarten since school opened in September. However, the negligence of those having the custody of a child *non sui juris* is not imputable to the child. 4 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 7041, and cases cited therein in note 43. Defendant made no request to submit the boy's contributory negligence and took no exception to the court's reference thereto, nor to any of the language of the charge before the jury retired. In disposing of the contributory negligence feature,

assignments of error Nos. 4, 5, and 6 should be set out together with the connecting sentences. Following the reading of § 2720-18(c) of the statute, the court said:

"[No. 4.] This statute has been read to you for what bearing it may have upon the question of whether or not the defendant's motorman used ordinary and reasonable care, under the circumstances, and not on the question of whether or not the boy was negligent. [No. 5.] It was not unlawful for the boy to cross the street at the time and place in question. (Piedmont avenue is a public highway and the boy had a right to be upon the street and was not a trespasser. The relative rights of pedestrians and vehicles in a public highway are equal and reciprocal.) [No. 6.] By reason of his tender years, the boy was not guilty of contributory negligence, and the question of the effect you would have given to conduct similar to his on the part of a person of more mature years and experience is wholly immaterial."

No error is assigned as to giving the two sentences inclosed in parentheses. From the absence of any request to submit plaintiff's contributory negligence and the absence of any exception to any of the language used in the charge, at the time it was delivered, it would seem to a majority of the court that defendant at the time of the submission of the case did not wish to have the boy's contributory negligence submitted; hence defendant could not be harmed or prejudiced by the statement that "by reason of his tender years the boy was not guilty of contributory negligence."

Another assignment of error is that defendant should have been granted a new trial upon the grounds of excessive damages, appearing to have been given under the influence of passion and prejudice. The verdict was for $12,000. A verdict for $15,000 for the loss of a leg of an 11-year old boy was held not so excessive as to indicate passion or prejudice in its rendition in Weasler v. Murphy T. & S. Co. 167 Minn. 211, 208 N. W. 657. It is true the handicap to the boy there was greater than here, in that the amputation of the leg was so close to the hip as to leave only a two-inch stump, while here the stump left is two inches below the knee. We cannot say at

this time of depreciated value of money and especially of its earning power that $12,000 is an excessive amount for the loss of the leg of a six-year old boy. Certainly it is not so large as to indicate that the jury was moved by passion or prejudice. There was nothing in the trial to excite passion or prejudice. Indeed, of the many records examined by the writer none has given a better example of a fair and impartial trial. There was no bickering across the table by the attorneys. There was not the slightest attempt by either attorney to browbeat witnesses or to pervert the meaning of their answers. Every witness apparently was giving his or her best recollection of what had been seen without any disposition to favor either party. In fact, it was an ideal trial. A crippled child, no doubt, has the sympathy of every normal juror, but we have faith in the integrity of jurors that when they accept the duty of determining the issues of a lawsuit according to the evidence they will as far as humanly possible put sympathy aside.

We find no error.

The order is affirmed.

MR. JUSTICE HILTON, because of illness, took no part in the consideration or decision of this case.

