MABEL PETTIT v. RUSSELL R. LIFSON, *d.b.a.* R. & L.
DISTRIBUTING COMPANY, AND ANOTHER.
ALLEN BARSTAD, A MINOR, BY MABEL PETTIT, HIS
MOTHER AND NATURAL GUARDIAN, v. SAME.[1]

January 30, 1953.

Nos. 35,805, 35,806.

[1]Reported in 57 N. W. (2d) 34.

350

*Robb, Robb & Van Eps,* for appellants.
*Robins, Davis & Lyons,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Two actions arising out of an accident which happened on July 6, 1949, at 1:30 p. m. when a delivery truck owned by defendant Russell H. Lifson and driven by his employe, defendant Sam Schenfeld, ran down Allen Barstad, a minor then nine years of age. The accident occurred in an alley that runs in a north and south direction from Sims street on the north to York avenue on the south,

midway between Payne avenue on the east and Edgerton street on the west in the city of St. Paul.

Mabel Pettit, as mother and natural guardian of Allen Barstad, brings one action on his behalf for personal injuries sustained by him as a result of the accident and the other on her own behalf for special and consequential damages sustained by her as a result thereof. The jury returned a verdict of $19,000 in favor of Allen Barstad and a verdict of $9,000 in favor of Mabel Pettit. Subsequently, in the Allen Barstad action, the court denied defendants' motion for judgment notwithstanding the verdict or for a new trial and, in Mabel Pettit's action, it denied defendants' motion for a new trial, both denials being contingent upon Mabel Pettit's consent to a reduction of the verdict in the latter action to $4,500. She having consented thereto, defendants appealed in each action from the orders denying their motions for a new trial.

It is the contention of defendants that (1) the evidence does not sustain a finding of negligence against either of them; (2) the evidence established the contributory negligence of Allen as a matter of law; and (3) on the issue of defendants' negligence the court erred in submitting to the jury for consideration the following factors: (a) lookout; (b) speed; (c) warning; and (d) position of defendants' truck in the alley. It is defendants' further contention that the verdicts are excessive.

The alley is 20 feet in width. It has three accesses for vehicles, each from a residential street. Payne avenue to its east is largely built up with commercial structures, although some residential apartments are located on the second floors of these commercial structures, and there is at least one residence fronting thereon just east of the point where the accident occurred.

At about 1:30 p. m., July 6, 1949, Schenfeld had stopped the truck, a 1948 Chevrolet, at Klein's food market, which is located just east of the alley's intersection with Sims street and about half a block north of the place where the accident occurred. The truck was then parked on the easterly edge of the alley. After making his delivery there, Schenfeld proceeded southerly down the alley to-

ward York avenue. After he had thus traveled for some distance, his truck struck Allen as the latter emerged from between two private garages located east of the alley.

Schenfeld testified that just prior to the accident he was traveling down the center of the alley. He was familiar with the physical characteristics of the alley and had used it 50 or more times previously. In a statement to the insurance company made shortly after the accident, he admitted the left side of the truck was about five feet from the easterly edge of the alley. A photograph of the truck involved shows an indentation on the front hood thereof to the left of its center, identified by Schenfeld as the point where the truck came in contact with Allen's head. On a plat Schenfeld placed the distance between the truck and Allen, as the latter first emerged into the alley, at approximately 17 feet. He testified that his truck came in contact with Allen just to the west of the southwest corner of the northerly private garage above referred to. On cross-examination, he testified that, had there been a distance of 20 feet between him and Allen, he possibly could have swerved to the right and applied his brakes and that possibly, if there was 25 feet distance between him and the boy, he could have missed him.

Rose Sauber, a witness called on plaintiff's behalf, testified that she observed the accident from a point about 15 feet east of the point of impact; that she first observed Allen and another boy running westerly between the two garages; and that the truck struck Allen opposite a tree near the northwest corner of the southerly garage. This point was distant approximately 12 feet south of the point of impact fixed by Schenfeld and approximately 29 feet south of the point where Schenfeld placed the truck at the moment Allen emerged into the alley. She testified further that Schenfeld was driving on the easterly lane or left-hand side of the alley, although there was nothing to prevent his driving on the westerly lane thereof; that it was customary for trucks traveling both north and south to use the alley and to pass each other without difficulty therein; and that from time to time she had observed boys playing in the alley.

Dickie Wolff, a minor and the friend of Allen who was running with him just prior to the accident, testified that he was to the rear of Allen when Allen was struck, and that the point where Allen was lying after the impact was under the tree identified by Rose Sauber as in close proximity to the northwest corner of the southerly garage.

Allen, who could not recall all of the events just prior to the accident, testified that he had been running away from a "big boy" who had threatened to beat him up; that he and other boys had used the alley many times; that he had seen many other children using it; and that he had never heard of any other boy getting hurt in it.

As a result of this accident, plaintiff suffered head injuries, which resulted in total deafness in his left ear. He was knocked unconscious and remained thus approximately 12 hours. A spinal fluid was observed coming from his ear immediately after the contact. The following three days he lapsed from consciousness to unconsciousness at intervals. He was in the hospital for 22 days and after his discharge remained bedridden for about three weeks, except on occasions when he was helped to the front porch to observe his playmates.

Medical testimony indicates a severe head injury; a skull fracture; injury to the eighth cranial nerve, which bears a direct relationship to the sense of hearing; injury to the vestibular portion of the ear; injury or destruction to other nerves; impairment of certain facial nerves; partial paralysis of the left facial muscle; and personality changes of a permanent nature.

Testimony was submitted establishing that after the accident Allen appeared to be "high strung, very nervous" and did not respond to conversations but often stared into space; that he had lost his appetite; that his marks in school had become lower; that he suffered pain and headaches at the basal part of his skull and at the neck juncture; that he suffered dizzy spells at play and was forced to rest frequently; and that he complained of a buzzing and ringing in the left ear from time to time.

■ We are of the opinion that the issue of defendants' negligence was for the jury. M. S. A. 169.18, subd. 1, provides:

"Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, * * *."

This section is applicable to alleys as well as to streets and highways. § 169.01, subd. 29; Bosell v. Rannestad, 226 Minn. 413, 33 N. W. (2d) 40; Merritt v. Stuve, 215 Minn. 44, 9 N. W. (2d) 329; Marty v. Nordby, 201 Minn. 469, 276 N. W. 739. There is substantial evidence that defendant Schenfeld was driving in violation of the provision. The alley was 20 feet in width and the westerly half thereof free of obstructions. Schenfeld admitted that the left side of his truck was some five feet from the easterly edge of the alley; that Allen emerged abruptly into the alley traveling in a northerly direction; and that just before the impact Allen was headed north on his (Allen's) "extreme right" of the alley. A photograph of the truck established that Allen came in contact with the left front side of its hood. Such evidence would amply sustain a finding that, had the truck been traveling down the right half of the alley, as the statute directed, it would not have struck Allen, and that defendants' violation of § 169.18, subd. 1, therefore, was the proximate cause of the accident. Kulla v. E. B. Crabtree Co. 203 Minn. 105, 280 N. W. 16; Oxborough v. Murphy Transfer & Storage Co. 194 Minn. 335, 260 N. W. 305; Peterson v. Miller, 182 Minn. 532, 235 N. W. 15; Harrsch v. Breilien, 181 Minn. 400, 232 N. W. 710. See, Hinman v. Gould, 205 Minn. 377, 286 N. W. 364. Cf. Barrett v. Nash Finch Co. 228 Minn. 156, 36 N. W. (2d) 526.

■ It is defendants' contention that, since Allen was not using a regular crosswalk, the duty rested upon him to yield the right of way to defendants' truck (§ 169.21, subd. 3) and that his failure in this respect established his contributory negligence as a matter of law. Section 169.96 specifies that violation of statutory regulations covered by M. S. A. c. 169, including §169.21, subd. 3, shall constitute prima facie evidence of negligence only. In line therewith, we have repeatedly held that violation of the provisions of the

highway traffic regulation act does not establish negligence as a matter of law. Medved v. Doolittle, 220 Minn. 352, 19 N. W. (2d) 788; Schnore v. Baldwin, 217 Minn. 394, 14 N. W. (2d) 447; Wojtowicz v. Belden, 211 Minn. 461, 1 N. W. (2d) 409; Hollander v. Dietrich, 181 Minn. 376, 232 N. W. 630. In particular, we have held that the presence of a pedestrian on a street at a point where it is his duty to yield to vehicular traffic does not establish his contributory negligence as a matter of law. Saunders v. Yellow Cab Corp. 182 Minn. 62, 233 N. W. 599.

■ Further, § 169.21, subd. 3, does not prohibit a pedestrian from crossing a highway at other than a crosswalk. It merely requires that he yield the right of way to a vehicle lawfully using such highway. If it be assumed that Allen was crossing the alley instead of traveling north thereon, the duty to yield the right of way to defendants' truck would not have become obligatory until he had reached the westerly half of the alley. Since it is undisputed that he was struck while traveling in the easterly half, it is clear that § 169.21, subd. 3, would have no application. Aide v. Taylor, 214 Minn. 212, 7 N. W. (2d) 757, 145 A. L. R. 530; Peterson v. Miller, *supra;* Annotations, 79 A. L. R. 1073, 1089, and 145 A. L. R. 536.

■ There does not otherwise appear to be evidence which compels a finding that Allen was guilty of contributory negligence as a matter of law. The record discloses that he was running at the time of the accident but that his actions were motivated by his fear of an older boy who was chasing him. The rule is well established that a minor is required to exercise only the degree of care and vigilance which reasonably may be expected of one of his age and mental capacity acting under similar circumstances. Eckhardt v. Hanson, 196 Minn. 270, 264 N. W. 776, 107 A. L. R. 1; Peterson v. Miller, *supra.* It is only where facts are undisputed and reasonable minds can draw but one conclusion therefrom that the issue of contributory negligence becomes one of law. Heikkinen v. Cashen, 183 Minn. 146, 235 N. W. 879; Saunders v. Yellow Cab Corp. *supra;* Heflin v. Swenson, 181 Minn. 277, 232 N. W. 265; Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580. Under the facts here in

evidence and in view of the well-established principles above set forth, we are convinced that the issue of Allen's negligence was properly submitted to the jury for its determination.

■ Defendants urge that the trial court erred in reading certain sections of the highway traffic regulation act, particularly those relating to lookout, control, speed, and warning. In support thereof, they argue that there was no evidence of insufficient lookout; that defendant was driving at a moderate rate of speed and promptly brought the truck to a stop after observing Allen; that no duty rested upon him to sound a warning before the appearance of Allen; and that thereafter there was insufficient time to do so. The plat received in evidence and marked with various locations by Schenfeld disclosed that the truck was approximately 17 feet north of the southwest corner of the northerly garage when Schenfeld first observed Allen emerge into the alley. The witnesses Rose Sauber and Dickie Wolff fixed the point of impact as near the northwest corner of the southerly garage at a point approximately 29 feet south of the truck's position at the time the driver thereof first observed Allen emerging into the alley. Under their testimony and under Schenfeld's admissions that he could have swerved to the right and applied his brakes within a space of 20 feet and that within a distance of 25 feet he could have avoided contact with Allen, a jury might conclude that, after he first observed Allen, Schenfeld had sufficient time to stop his truck, to swerve it to the right, or to sound a warning so as to avoid the impact. It might further conclude that his failure to so act was the result of his negligence in not keeping a proper lookout or in operating his truck at an unreasonable rate of speed in view of the hazards to be anticipated in an alley where boys were accustomed to play. Under such circumstances, we find no error in the court's instructions on those sections of the highway traffic regulation act relating to lookout, control, speed, and warning.

■ Defendants assert that both verdicts are excessive. With this we cannot agree. Allen's injuries have been itemized in detail in the statement of facts above. They are serious and permanent,

and there is nothing in the record which would manifest passion or prejudice in the jury's measurement of his damage as a result thereof.

In the Mabel Pettit case, in awarding damages the jury was entitled to consider not only special damages already incurred in the sum of $676.50 but also her future obligation for like items of expense. Further, there was medical testimony that Allen would require special tutoring and instruction to overcome deficiencies in personality and physical condition resulting from the accident. The record shows that he was required to help his mother, who was obligated to work in support of her family. No doubt he would be of substantial additional assistance to her as time went on. That his capacity in this respect will be seriously limited by his defect in hearing and other results of the accident cannot be seriously questioned. Under such circumstances, we do not feel the verdict in the Mabel Pettit case, as finally reduced by the trial court, was excessive.

Affirmed.

MR. JUSTICE ROGER L. DELL, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.