WILLIAM S. FENTON v. MINNEAPOLIS
STREET RAILWAY COMPANY.

89 N. W. (2d) 404.

March 28, 1958—No. 37,143.

---

[31]Mushel v. Schulz, 139 Minn. 234, 166 N. W. 179.
[32]See, Bingenheimer v. Diamond Iron Min. Co. 237 Minn. 332, 54 N. W. (2d) 912.

*Michael J. Welsh* and *Gordon Paterson,* for appellant.

*William H. DeParcq, Donald T. Barbeau,* and *Robert N. Stone,* for respondent.

MATSON, JUSTICE.

Appeal in a personal injury action from an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

Issues arise upon this appeal as to: (1) Alleged error of the trial court in failing to give an express instruction on the issue of contributory negligence; (2) appellant's allegation that the court's charge erroneously permitted the jury to test the bus operator's negligence only by the highest-degree-of-care standard applicable to the relationship of carrier and passenger; (3) the denial of a requested instruction that the bus driver could assume plaintiff would exercise due care until he received notice to the contrary; (4) the propriety of admitting a self-serving statement as part of the res gestae; (5) the admission of a part of a conversation without admitting the whole thereof; (6) alleged misconduct of counsel; and (7) the alleged excessiveness of the verdict.

The above issues are presented by appellant's statement of the questions involved upon this appeal, which was made in compliance with Supreme Court Rule VIII(3)(c), (222 Minn. xxxiii). Since there is a presumption that appellant has complied fully with this rule, as well as with other rules of this court, it is not necessary to consider the individual assignments of error to ascertain if they raise any additional issues.

Plaintiff was injured on March 4, 1955, at about 8:10 a. m., while he was attempting to board one of defendant's passenger buses in the city of Minneapolis. Taking, as we must, the evidence in the light most favorable to the verdict we have these facts: En route to downtown Minneapolis, plaintiff was standing at the Sixteenth Street and Fourth Avenue South intersection waiting to board the next bus. While he was thus waiting, three women arrived for the same purpose. When the bus

approached and stopped, plaintiff, who was standing closest to the bus door, stepped aside to permit the women to enter the vehicle first. When the last of the' women was on the bus, to the extent of being either on the top step or on the one below it, plaintiff proceeded to enter the bus by putting his left foot on the bottom entrance step and by grabbing with his left hand a verticle rod inside the vehicle. He does not recall whether at this moment he had his right foot still on the curb or had lifted it off the ground as a part of his boarding action. While he was thus entering the vehicle, the bus doors suddenly closed and the bus zoomed forward for about seven feet when the bus driver stopped in response to an outcry by one of the passengers. When the bus door closed, plaintiff extricated his left foot but was unable to jerk free his left hand and, as a result, he was pulled along with the bus and thrown to the ground. As he fell his right foot received a crushing injury when it was run over by the bus wheel. The bus driver testified that before he closed the bus doors and started the vehicle he looked and saw no one on the bus steps. The evidence is conflicting but it reasonably sustains a finding by the jury that plaintiff was in the act of boarding the bus as above related when the doors closed and the bus moved forward.

■ Did the trial court err in failing to charge the jury expressly upon the issue of contributory negligence? In considering this question, we must consider the reasonable meaning or impact of the charge as a whole as applied to the evidence. At the very beginning the jury was told that its most important decision was *to determine first* whether or not plaintiff had become a passenger on the bus or was in the process of boarding the bus when the accident occurred. The court then instructed the jury that:

"If you find that the plaintiff, *in the exercise of due care* while the bus was stopped for the taking on of passengers, was attempting to board the bus, was either partly upon the bus and steps thereof *or was in the act of carefully and prudently attempting to step upon the steps* or platform of the bus, with the knowledge of the driver, or if the driver should have known, in the exercise of ordinary care, consistent with the operation of the bus, *then plaintiff would be considered a passenger*

*on the bus,* it would then be the duty of the defendant, as a common carrier, to exercise for his safety the highest degree of care consistent with the carrying on of the business of the company operating this bus.

"* * * Now, the Court charges you, as a matter of law, *if you find that the plaintiff was a passenger or was engaged in boarding that bus, within the definitions I have given you, there is no contributory negligence* on the part of the plaintiff, and the burden is upon the plaintiff to prove the negligence of the defendant." (Italics supplied.)

The instructions were in accord with the well-established rule that when a bus or streetcar has stopped at the usual place[1] for, and is still waiting to receive, passengers, a carrier-passenger relation arises not only when a prospective passenger *in the exercise of ordinary care* has actually entered the vehicle or has placed himself partly or wholly upon the entrance steps or platform thereof,[2] but also prior thereto while he is in the act of *carefully and prudently attempting* to board the bus[3] or attempting to step upon its entrance platform or steps,[4] if the bus operator then knows, or in the exercise of ordinary care ought to know, that such person is attempting to board the vehicle.[5]

█    In the light of the evidence, the instructions contained no prejudicial error. The instructions as a whole did not permit a recovery against the defendant unless the jury first found that plaintiff had boarded the bus, or *in the exercise of due care was carefully and prudently* attempting to step upon the steps or platform of the bus. If the jury so found, then plaintiff had become a passenger and he could not thereafter, upon the

---

[1]See Richey v. Minneapolis St. Ry. Co. 135 Minn. 54, 160 N. W. 188, as to stopping of streetcar to receive a passenger at a place other than the usual stopping place. As to standard of care required of carrier in protecting an alighting passenger from surface defects in the street, see Gillson v. Osborne, 220 Minn. 122, 19 N. W. (2d) 1.

[2]Gaffney v. St. Paul City Ry. Co. 81 Minn. 459, 84 N. W. 304; Smith v. St. Paul City Ry. Co. 32 Minn. 1, 18 N. W. 827.

[3]Mardorf v. Duluth-Superior Transit Co. 199 Minn. 325, 271 N. W. 588; Id. 194 Minn. 537, 261 N. W. 177.

[4]Smith v. St. Paul City Ry. Co. *supra;* Miller v. St. Paul City Ry. Co. 66 Minn. 192, 68 N. W. 862.

[5]Smith v. St. Paul City Ry. Co. *supra;* Mardorf v. Duluth-Superior Transit Co. 194 Minn. 537, 261 N. W. 177; 3 Dunnell, Dig. (3 ed.) § 1261.

evidence herein, be found contributorily negligent. The only evidence possibly bearing upon that issue is plaintiff's alleged statement at the scene to a police officer who testified: "* * * I questioned him as to what happened and he said that it was his foot that had been hurt, he had slipped and that his foot had been run over by the bus." If plaintiff was boarding the bus within the court's instructions, the alleged admission became immaterial since then the bus driver must have closed the doors and started the bus before plaintiff could complete his act of entering the vehicle. If plaintiff "slipped" because the bus moved forward after he had partially entered the vehicle, and he was caught by the closing doors, the facts would not justify any finding of contributory negligence. The instructions as a whole informed the jury that the issue of contributory negligence was to be excluded only if plaintiff was found to have attained the status of a passenger. The instructions, however, expressly required that plaintiff in attempting to board the bus be found to be *"in the exercise of due care"* and that he be *"carefully and prudently attempting* to step upon the steps or platform of the bus." (Italics supplied.) The requirement that plaintiff exercise due care and act carefully and prudently in attempting to board the bus was the equivalent of instructing the jury that plaintiff could not recover if he was contributorily negligent by failing to exercise ordinary care. Although a party is entitled to a specific instruction on his theory of the case *if there is competent evidence to sustain it* and the instruction is properly requested, such instruction need not be given in the particular form requested and it may even be denied if the substance of it is adequately covered by the charge as a whole.[6] Although an overconcise statement of abstract law, though technically correct, usually needs some amplification if its correct meaning, as applied to the facts, is to be apprehended by the average juror, we cannot say that the charge herein, in the light of the evidence, was inadequate.

There is no merit in defendant's contention that the trial court

---

[6]See, Manteuffel v. Theo. Hamm Brewing Co. 238 Minn. 140, 56 N. W. (2d) 310; Devall v. Standard Oil Co. 239 Minn. 87, 57 N. W. (2d) 835; Randall v. Goodrich-Gamble Co. 244 Minn. 401, 70 N. W. (2d) 261; 19 Dunnell, Dig. (3 ed.) §§ 9777, 9778, 9781.

erroneously limited the jury to the standard of care that the defendant as a carrier of passengers for hire was bound to exercise the highest degree of care and diligence consistent with the practical operation of its buses and was responsible for the slightest negligence. In the first place the charge plainly informed the jury that the bus operator was required only to exercise ordinary care in discharging his duty of observing or discovering plaintiff's attempt to board the bus. Under the instructions, if plaintiff was not in the act of attempting to board the bus, or if he had not become a passenger, there could be no recovery. Furthermore, there is no evidence that plaintiff and the bus came in contact with each other except as part of a passenger-loading operation. In the light of the evidence the charge was adequate.

■ There is likewise no merit in the contention that the trial court erred in refusing to instruct the jury that the bus operator could assume plaintiff's reasonable care until he received notice to the contrary. Upon the facts the bus driver's duty to observe the presence of passengers and prospective passengers before he closed the gates and started the bus could not be qualified or neutralized by any assumption on his part as to the exercise of care by others. Defendant alleges that his theory of the case is that the plaintiff was not between the gates, or in view in front of the bus gates, after the last preceding passenger had boarded so that the plaintiff was negligent in any delayed attempt to board the bus, and that therefore the bus operator was not negligent in assuming that plaintiff would promptly take a visible position or otherwise make known his presence alongside the bus and his desire to board the vehicle. This theory is nothing but an inversion of the doctrine of contributory negligence which has already been dealt with in this opinion.

■ Did the trial court err, however, in admitting, under the res gestae rule, testimony as to a statement made by plaintiff immediately after the accident? A passenger who got off the bus immediately after the accident and put her scarf under plaintiff's head was permitted to testify that at this time plaintiff, who was lying on the ground with a crushed foot and groaning in pain, mumbled something about getting his arm caught in the doors. Another bus passenger gave similar testi-

mony. The theory of the res gestae rule is that utterances, accompanying or forming part of a transaction or occurrence spoken spontaneously in response to nervous stimulation produced by the transaction or occurrence, are admissible to explain or characterize it. Although such statements are hearsay, they derive their sanction as evidence from the fact that the immediate impact of the circumstances of their utterance eliminates intention and opportunity for fabrication to such an extent as to be a reasonable substitute for an oath.[7] Whether a statement, upon the facts of the particular case, constitutes a part of an act or transaction so as to be admissible in evidence as a part of the res gestae rests in the sound discretion of the trial court.[8] Here there was no abuse of discretion and no error occurred. The sweeping generality that an out-of court statement is inadmissible on the ground that it is a self-serving declaration has been thoroughly discredited since such statements are constantly being received when properly brought under the res gestae exception (as well as under other exceptions) to the hearsay rule.[9]

■ Plaintiff read into evidence a portion of the deposition of a police officer containing his testimony that, while at the accident scene, the bus driver told him that he did not see plaintiff before the accident happened. The trial court denied defendant the right to read into evidence another portion of the same deposition to show that the bus driver, as a part of the same conversation, had told deponent that *he thought the plaintiff might have been running to catch the bus but he didn't see him.* The court also sustained an objection to defendant's offer of proof to show that the bus driver, in his conversation with the police officer, had also told the latter that, after the three women had boarded the bus, he had observed no one on the bus steps *and that plaintiff must have run up afterwards.* The trial court did not err. The proffered parts of the deposition and of the conversation so excluded were clearly inadmissible as involving conclusions of the witness as distinguished from testimony as to what he had observed and done.

---

[7]Ammundson v. Falk, 228 Minn. 115, 36 N. W. (2d) 521, 7 A. L. R. (2d) 1318; 7 Dunnell, Dig. (3 ed.) § 3300.

[8]7 Dunnell, Dig. (3 ed.) § 3301; see, McCormick, Evidence, § 274.

[9]See, McCormick, Evidence, § 275.

Where only a part of a deposition is used for impeachment, any party, pursuant to Rule 26.04(4), Rules of Civil Procedure, may introduce the other parts *but only in so far as such other parts of the deposition are admissible under the applicable rules of evidence.*

■ Thirty-two pages of defendant's brief are devoted to illustrations of alleged misconduct on the part of plaintiff's counsel in the course of the trial and in his closing argument. No purpose will be served in detailing the alleged acts of misconduct. Suffice it to say that we have given careful consideration and we do not find any misconduct so prejudicial as to require a new trial. The matter of granting a new trial for misconduct of counsel is governed by no fixed rules but rests almost wholly in the discretion of the trial court, and its action will not be reversed upon appeal except for a clear abuse of discretion.[10]

■ Was the verdict of $21,000 for damages excessive? Up to the time of trial plaintiff had incurred medical and hospital expenses of $1,618.52 and $2,240 for loss of wages. The total special damages amounted to $3,858.52, which left $17,142 of the award for general damages.

In support of the contention that the award is excessive, defendant asserts that the sole injury to plaintiff's foot was a fracture in the right foot which was completely healed within 4 months and that any disability remaining thereafter was the proximate result of a progressive preexisting circulatory difficulty affecting both legs. Whether after the 4-month healing period plaintiff's continuing disability, pain, loss of wages, and need for medical treatment were the proximate result of the accidental injury or the proximate result of the normal progression of a preexisting circulatory defect must be resolved primarily upon a consideration of the medical testimony.

As a background for the medical evidence, we have these additional facts based upon plaintiff's testimony which the jury could reasonably find to be true. After the plaintiff returned to his job in June 1955, his

---

[10]See, Hammel v. Feigh, 143 Minn. 115, 173 N. W. 570; Harris v. Breezy Point Lodge, Inc. 238 Minn. 322, 56 N. W. (2d) 655; Nelson v. Twin City Motor Bus Co. 239 Minn. 276, 58 N. W. (2d) 561; Hardy v. Anderson, 241 Minn. 478, 63 N. W. (2d) 814; 14 Dunnell, Dig. (3 ed.) § 7099b.

right foot was afflicted with numbness and pain and he had difficulty in performing his work. On September 20, 1955, he again returned to the hospital for further treatment. In October he again returned to work. After about 2 months his right foot again commenced to ache and he had numbness across the toes. Again he was hospitalized in January and underwent surgery. In March he once more returned to his job and has since continued to work but under the following difficulties. Whenever, in the course of his regular employment, he stands too long, drives in heavy traffic, or unloads several 50-pound sacks his right foot commences to ache and becomes numb with the result that he has to sit down and rest before going on with the work. He has difficulty in walking more than a block and a half without resting. Although during the period he used crutches because of the accidental injury to the right foot plaintiff had similar pain in the left foot, that pain has not recurred since the crutches were discarded. Prior to the accident, in addition to performing his regular employment without difficulty, plaintiff actively participated in such outdoor activities as deer and pheasant hunting. Changes in the weather cause his right foot to pain and ache.

Now we turn to the medical testimony and findings. Dr. Kenath H. Sponsel, who treated plaintiff after his injury on March 4, 1955, testified that when plaintiff came to him for further treatment in July the crush injury to the right foot had healed with a restoration of normal motion, and that his physical difficulties were then caused by an insufficiency of circulation affecting both legs. Since such circulatory condition was not usually of an orthopedic nature, he referred plaintiff to Dr. Virgil Lundquist.

Dr. Lundquist testified that in July 1955, and at all times thereafter when the plaintiff was under his care, plaintiff had an arterial difficulty in both legs and that this condition was more pronounced in the right leg than in the left. He said that plaintiff's symptoms indicated conditions which may be but are not usually traumatic. It was his opinion, however, that plaintiff's right-foot condition was post traumatic and was caused by the accidental injury. It was his further opinion that plaintiff had suffered, *and would continue to suffer,* pain and discomfort in his right lower extremity. He said it might be possible to alleviate plaintiff's condition by the performance of an admittedly dangerous operation

but that the results thereof would be entirely conjectural.

Defendant's medical expert, Dr. James E. O'Donnell, in response to a hypothetical question, expressed the opinion that plaintiff had thrombophlebitis or a spastic condition of the blood vessels of the feet which caused intermittent coagulation and distress in his feet. Upon cross-examination, he said this condition would not be precipitated but could be *aggravated* by trauma.

A conflict in the opinions of expert witnesses is to be resolved by the jury, and in determining the comparative weight to be given to the respective expert opinions, the jury may consider the qualifications of each expert and the source of his information.[11] In the light of the medical and other testimony, an award of $3,858.52 for special damages is reasonably sustained. After deducting the special damages from the $21,000 verdict, we have slightly more than $17,000 as compensation for permanent disability, pain, and suffering for a man whose life expectancy at the time of the trial was approximately 19 years. Although the award may be liberal, we cannot say that it is unreasonable or that it so greatly exceeds just compensation as to be indicative of passion and prejudice. Whether a new trial should be granted or refused on the ground of excessive or inadequate damages rests in the sound discretion of the trial court.[12] The jury could reasonably find that plaintiff suffered a permanent injury as a result of the accident through an aggravation of a preexisting circulatory condition, and that he will suffer continued pain throughout his life as a result. Plaintiff was a robust man of slightly over 50 years prior to the accident and he subsequently became severely handicapped and could not walk two blocks, free of pain, without resting.

The order of the trial court is affirmed.

Affirmed.

---

[11] In re Estate of Gordon, 184 Minn. 217, 238 N. W. 329; Kieffer v. Sherwood, 184 Minn. 205, 238 N. W. 331; Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534; 7 Dunnell, Dig. (3 ed.) § 3334.

[12] Litman v. Walso, 211 Minn. 398, 402, 1 N. W. (2d) 391, 393; Maas v. Midway Chevrolet Co. 219 Minn. 461, 18 N. W. (2d) 233, 158 A. L. R. 215; 14 Dunnell, Dig. (3 ed.) § 7133.