# TODD STEPHEN CAPRIOTTI, BY FRANK J. CAPRIOTTI AND ANOTHER, HIS PARENTS AND NATURAL GUARDIANS, AND ANOTHER v. EDWARD A. BECK.

117 N. W. (2d) 563.

October 19, 1962—No. 38,295.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *Mary Jeanne Coyne,* for appellant.

*Nemerov, Perl, Spector & Hunegs,* for respondents.

ROGOSHESKE, JUSTICE.

This is a personal injury case involving a 3½-year-old pedestrian who darted from a sidewalk into a city street and was struck and injured by defendant's automobile. Plaintiffs, the child's parents, brought action on behalf of their son, Todd, for his damages and also for the father's special damages. The jury awarded substantial damages and thereafter the trial court denied defendant's alternative motion for judgment notwithstanding the verdict or for a new trial. Defendant appeals.

There is no real conflict of the basic facts. The accident took place on July 30, 1958, in front of the Prudential Insurance Company office located on the east side of West Broadway, one of the principal thoroughfares in Robbinsdale, Minnesota. It occurred at about 5:15 p. m. on a clear day. In this area, West Broadway runs generally north and south and is level tarvia in good condition, 50 feet wide from curb to curb. The buildings on either side of the street are mixed business and residential. There are no intersections or crosswalks for some distance in the vicinity of the accident. The posted speed is 30 miles per hour. While there was disagreement about the customary presence of children in the vicinity, it was established that within the area there is a vacant lot used for playing ball, a miniature golf course and archery range, and a lake, to all of which children were naturally attracted. There was testimony from which the jury could find that pedestrians frequently crossed Broadway at points other than the intersections. Although there were no signs alerting drivers of the presence

of children or pedestrians, defendant was familiar with the area as he had traveled this street between his work and his home for about the past 19 years. Shortly before the accident, plaintiff's mother, an employee of Prudential, accompanied by Todd, had returned to the office for personal reasons. While in the building Todd received some candy and he then wandered out of the building onto the sidewalk. The evidence then indicates that Todd ran from the sidewalk across the parking lane in front of an automobile parked at the curb adjacent to the Prudential office and into the northbound traffic lane where he was struck by the right front fender near the headlight of defendant's automobile. As a result of the accident Todd sustained serious head injuries.

Defendant assigns the following errors: (1) The insufficiency of the evidence to establish any negligence on his part; (2) error in charging the jury; (3) error in submitting the issue of impairment of future earning capacity; and (4) misconduct of counsel in final argument.

1. Defendant's primary challenge appears to be the sufficiency of the evidence to establish plaintiffs' claims that his negligence contributed to the cause of the accident. In cases of doubtful liability such as this it is quite understandable that this is the most crucial question. A proper decision as to what facts have been established, and, most important here, as to what reasonable inferences may be drawn from the testimony and the undisputed facts, presents the utmost challenge to judicial skill. It is most oppressively experienced by the trial judge who must, under the exigencies of trial, discharge the onerous responsibility of deciding whether to submit issues or not. This is especially true where the testimony submitted is without substantial dispute and where the perplexity is over the inferences to be drawn from such testimony. A painstaking review of the record leads us to the conclusion that the trial court was correct in submitting the case to the jury and denying defendant's motion for judgment notwithstanding the verdict.

Without objection, the question of defendant's liability was submitted to the jury upon plaintiffs' theory that defendant could be found

negligent with respect to speed, lookout, control in an emergency, and failure to warn. Incorporated in the submission was defendant's theory of defense that the accident was unavoidable and that he had exercised due care in the emergency created solely by the sudden movements of the child. Final arguments to the jury were reasonably consistent with the court's instruction.

The testimony on the issue of liability was neither lengthy nor complicated. Defendant testified that he was on his way home and was proceeding at an estimated speed of 25 miles per hour. As the front of his vehicle was about even with the middle of the parked automobile, he saw the child for the first time. Todd was then 2 to 3 feet out from the curb and was 5 to 6 feet in front of the parked automobile. The defendant did not sound his horn but immediately and violently applied his brakes. As he did so, an automobile driven by Richard H. Nelson collided with the rear of his automobile. It was established by other testimony that Nelson had been driving at the same speed about two car lengths behind defendant for a distance of several blocks and that Mary Jane Schreyer was driving an automobile about the same distance and speed behind Nelson. Mrs. Schreyer testified that she saw the child on the sidewalk and then saw him disappear behind the parked automobile and reappear into the street; that she was "alerted" by his movement. She brought her car to a stop without mishap. She testified that she had sufficient room to stop her car some distance behind the Nelson car "before any risk of hitting that car." Defendant's car stopped in the northbound lane of travel approximately the same distance from the centerline as he was proceeding on the street before the accident. Black skid marks from each of the four wheels of defendant's car—the marks from the front wheels being partially overlaid by the marks from the rear wheels—measured 41 feet. There was scant testimony describing the nature and extent of the physical damage due to the rear-end collision between the defendant and the Nelson vehicles, and there was no description of the number and location of oncoming cars.

From this abbreviated recital of the record, we believe it is demonstrated that the testimony, including the credibility thereof and the

inferences to be drawn therefrom, created a dispute as to the true facts relative to the speed of defendant's vehicle; the visibility and movement of Todd; the point at which defendant was on the street when he first saw Todd; and the point at which he applied his brakes. It is also demonstrated that reasonable men might differ as to the inferences which might be drawn to determine the precise circumstances existing when defendant was called upon to perform his duty in the emergency confronting him. Where reasonable men may differ as to what facts have been established by the evidence, it is well settled that the question is for the jury.[1]

Moreover, viewing the testimony in the light most favorable to the verdict, the jury could have found by reasonable inferences either that defendant's speed was greater than 25 miles per hour or was excessive under the hazards of this thoroughfare with his knowledge of pedestrians crossing outside of intersections. It could have found defendant violated his duty of lookout in failing to see Todd's movements in time to warn him or take reasonable precautions to avoid striking him. Finally, it could have found that his conduct in the emergency created by Todd's actions did not conform to the standard of care required by that rule. Any one of those conclusions in our judgment is supported by sufficient evidence to sustain the jury verdict on the issue of liability even though other minds functioning judicially could reach an equally sustainable opposite result.

The cases relied upon by defendant are all cases of similar fact situations where the trial court's decision to direct a verdict or grant judgment notwithstanding the verdict was sustained.[2] They provide no more assistance in determining whether these issues were for the jury than do the many cases plaintiffs cite where this court upheld such submission.[3] As it is impossible in this type of case to prescribe

---

[1] 13B Dunnell, Dig. (3 ed.) § 7048.

[2] Webb v. Robinson (4 Cir.) 241 F. (2d) 99; Fessler v. Northwestern Nat. Cas. Co. 265 Wis. 14, 60 N. W. (2d) 387; Watson v. Home Mutual Ins. Assn. 215 Iowa 670, 246 N. W. 655; see, DeLosier v. Metcalf, 248 Minn. 365, 80 N. W. (2d) 57.

[3] Pettit v. Lifson, 238 Minn. 349, 57 N. W. (2d) 34; Forseth v. Duluth-

definite rules in advance for every combination of circumstances which may arise, each such case must necessarily be distinctly and independently judged.[4]

We are constrained to hold, as did the trial judge, that these issues required submission and that the fate of the parties on these issues was solely in the hands of the jury.

2. As part of the jury charge, the court instructed that:

"It is the duty of drivers of automobiles to use their faculties to keep a reasonable lookout as to traffic conditions and to keep the car driven by them under reasonable control, and to maintain a speed that is reasonable and prudent and *so restricted as may be necessary to avoid colliding with any person or vehicle on the highway,* having due regard to the conditions and to the situation under which the vehicle is proceeding." (Italics supplied.)

Defendant characterizes this instruction relating to speed as devastating because, he insists, its effect was to incorrectly announce to the jury a rule that "a driver owes an absolute duty to restrict his speed so that he will avoid hitting anyone." He further argues that the error was prejudicial because in final argument plaintiffs' counsel, in an oblique answer to defendant's argument regarding the responsibility of an automobile driver, stated that a driver's responsibilities are "endless; * * * are one hundred per cent."

Minn. St. 169.14, subd. 1, is the statute from which the instruction was derived. It reads:

"Basic rule. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so restricted as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway *in compliance with legal requirements and the duty of all persons to use due care.*" (Italics supplied.)

---

Superior Transit Co. 202 Minn. 447, 278 N. W. 904; Knuth v. Murphy, 237 Minn. 225, 54 N. W. (2d) 771.

[4]See footnote 1, *supra.*

We can agree that this portion of the charge left something to be desired in order to fully inform the jury of the basic rule of speed and the conditions under which a reduced speed may be required. But we cannot agree with defendant's characterization of the language unless the words pertaining to restricted speed were isolated not only from the entire charge but from the rest of the paragraph quoted. This defendant does, and it is not persuasive. Under well-settled rules we must examine the charge in its entirety and not an isolated segment taken out of context.[5] The court correctly instructed the jury concerning the basic definition of negligence and proximate cause and explained to the jury the term "unavoidable accident." The charge as a whole emphasized to the jury that defendant's duty was no more than reasonable care, "such care as persons of ordinary prudence usually exercise under the same or similar circumstances."

Furthermore, the language of the statute omitted simply emphasizes a driver's right to rely on the assumption that other persons will use due care for their own safety. This cautionary admonition was not appropriate in the case since the parties agreed, and the court instructed the jury, that "[a] person of the age of the plaintiff, Todd Capriotti, cannot in law be found negligent."

By reading the whole of the charge, we are satisfied that the jury was not misled and understood that defendant's speed was required to be reasonable and commensurate with the actual and potential hazards existing.

3. We do not agree with defendant's claim that there was error in submitting the issue of impairment of future earning capacity.

Since Wilson v. Sorge, 256 Minn. 125, 132, 97 N. W. (2d) 477, 483, we adhere to the rule that impairment of future earning capacity is an item of general damages. We stated there that this item of damages:

"* * * permits recovery for a loss or diminution of the power to earn in the future and is based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experi-

[5]Kapla v. Lehti, 225 Minn. 325, 30 N. W. (2d) 685; Pratschner v. Electric Short Line Ry. Co. 149 Minn. 425, 184 N. W. 188.

ence, training, and industry. It is within the province of the jury to weigh all these elements and, guided by experience and common sense, to arrive at the proper monetary value of plaintiff's loss without recourse to his past earnings."

Todd suffered a severe fracture of the skull requiring surgical removal of part of the bone, removal of an area of the brain tissue, and the insertion of a metal plate. His injuries will have a permanent effect on his future life. He will always be restricted in engaging in activities which might result in his being struck on the head and is precluded from entering the armed services and, as enumerated by his attending physician, from any hazardous occupation such as "carpentry, plumbing, any construction work, mostly laboring activities." There was evidence that his brain was not functioning normally at the time of the trial, that he may require future revision of the metal plate. Also, he may in the future be stricken with convulsions and require extensive medical care.

The evidence was clearly sufficient to warrant a finding that Todd's future earning capacity will be impaired. Even though the extent of that impairment is extremely difficult to evaluate in the case of this young child who is far removed by years from even demonstrating an earning capacity, we can find no basis in principle or reason to hold that the rule should be limited in its application because of the age of the injured party where there is sufficient evidence of permanent disability. Its application must be left to the jury, subject to the admonition as here given by the court to refrain from making a determination based upon speculation, conjecture, passion, or prejudice, and subject further to the post-verdict scrutiny of the trial judge. Defendant appears not to challenge the application of this rule but merely the evidentiary basis therefor. Significantly, defendant does not claim that the verdict was excessive, lamenting only that a general verdict does not disclose how much of the award was given for future impairment of earning capacity.

4. Finally, defendant claims misconduct of opposing counsel in final argument. Granting a new trial on this ground is almost wholly

discretionary with the trial court.[6] A review of the record convinces us that there was no error in the refusal to grant a new trial on this ground.

Affirmed.

OTIS, JUSTICE (dissenting).

In my opinion the court's charge on the law governing speed, coupled with the misleading argument of plaintiffs' counsel with respect to defendant's duties to plaintiff, makes a new trial necessary. In a close case such as this, where liability is at best highly doubtful, the errors here present are clearly prejudicial.

Defendant has been found negligent in failing to avoid a collision with a small child, 3½ years old, who at the time of the accident was no more than 3 feet tall, and who ran into a busy city street between parked cars, in the middle of the block.

In response to counsel's argument that defendant's responsibilities as a driver had some limitations, counsel for plaintiffs over defendant's objection was permitted to argue:

"* * * When you are driving a piece of danger like an automobile, your responsibilities and my responsibilities are endless; our responsibilities are one hundred per cent, not only one hundred per cent to small children, but one hundred per cent to everybody else because we have an instrument of danger, an instrument of danger that can be much greater than any pistol or bullet."

This was an obvious misstatement of the law and invited the jury to impose absolute liability on defendant without regard to the limitations on the legal duties which he owed to pedestrians.

The error was compounded by instructions, to which timely objection was made, which in effect directed a verdict for plaintiffs if, regardless of defendant's rate of speed, it resulted in a collision. The court charged as follows:

"It is the duty of drivers of automobiles * * * to maintain a speed that is reasonable and prudent and *so restricted as may be necessary*

---

[6]Fenton v. Minneapolis St. Ry. Co. 252 Minn. 75, 89 N. W. (2d) 404; Wilson v. Sorge, *supra.*

*to avoid colliding with any person or vehicle on the highway,* having due regard to the conditions and to the situation under which the vehicle is proceeding." (Italics supplied.)

There was no elaboration, qualification, or other reference to speed anywhere in the court's charge.

It is not the law of Minnesota that motorists must drive at a speed which is "so restricted as may be necessary to avoid colliding with any person or vehicle on the highway." Although the court added, "having due regard to the conditions and to the situation under which the vehicle is proceeding," the instructions failed to spell out what conditions and situations a driver is required to consider. Without the essential qualifying statutory limitations, this rule makes drivers the insurers of pedestrians' safety. The court neglected to add that speed must be restricted so as to avoid colliding with any person *"on or entering the highway in compliance with legal requirements* and the duty of all persons to use due care." (Italics supplied.) Minn. St. 169.14, subd. 1.

While plaintiff Todd Capriotti was held as a matter of law not to be guilty of contributory negligence because of his age, that ruling did not in any way deprive defendant of his right to restrict his speed only to what is necessary to avoid colliding with persons *lawfully* entering the highway. The legal requirements governing a pedestrian's right to enter the highway may be found in § 169.21, which provides in part as follows:

Subd. 2. "* * * no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

Subd. 3. "Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway."

It is only with these important qualifications in mind that a motorist's conduct is to be judged in determining whether or not his speed is excessive.

If we are to hold that the instructions on speed here given fully and correctly state the Minnesota law, counsel's argument that a motorist's responsibilities are "endless" and "one hundred per cent" is entirely accurate. I would reverse and remand for a new trial.