# DANNY WOZNIAK, BY MARY WOZNIAK, HIS MOTHER AND NATURAL GUARDIAN, AND ANOTHER v. EVELYN LUTA AND ANOTHER.

103 N. W. (2d) 870.

June 10, 1960—No. 37,851.

*Herman Lewis* and *James L. Donaghue,* for appellants.
*Swensen & Miley* and *Thomas J. Burke,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment and from an order denying plaintiffs' motion for a new trial or for judgment notwithstanding the verdict.

At about 1 p. m., March 26, 1956, the defendant Evelyn Luta was driving a 1952 Plymouth 2-door coupe jointly owned with her husband, defendant Leonard Luta. She was proceeding north on 20th Avenue South, which runs generally north and south in Minneapolis. About one and a half blocks north of Washington Avenue South, approximately midway between First Street and Second Street, there was an impact between her car and the plaintiff Danny Wozniak, then 5 years old. This action was brought in his behalf by Mary Wozniak, his mother and natural guardian.

The neighborhood where the accident happened was partially residential and partially industrial; in the block where the impact occurred

there were homes on the east side of the street and the other side was industrial.

The paved portion of 20th Avenue South was 32 feet wide from curb to curb. The weather was clear and the surface of the street was dry and free of obstructions. The street had a black-top surface and was level, with no grade.

There were cars parked quite solidly along both sides of the street. In addition, on the west side of the street there was a second row of cars parked on the boulevard, and in some places the parked cars were three deep.

Approximately 25 feet from the west curb of 20th Avenue adjacent to the point of impact, there was a gas company building with a metal platform on the side facing 20th Avenue. The platform was about 4 feet square, with an iron railing, and about 5 feet above the ground level. There were steps leading to the ground. It was visible from Second Street even with cars parked in front of it.

At the time of the accident, and immediately prior thereto, there were no other cars traveling on 20th Avenue in either direction in the area involved. As she passed Second Street going north and approached the point of impact, Mrs. Luta was driving near the center of 20th Avenue with the left wheels of her car about 2 feet over the centerline. As she entered the block where the accident occurred, she testified that the speed of her car got up to 12 to 15 miles per hour.

As she proceeded up the block to the point where the accident occurred, Mrs. Luta saw several children playing on the gas company platform when she was approximately one car length, or 17 or 18 feet, south from the platform. When she noticed the children, she said that she saw one of them jump from either the platform or the steps, and that she immediately applied the brakes on her car. She claims that the child was "lost in the cars" and that she waited to see where he was going to come out. She said that when she again observed the child he was pretty close to the street to her left, "running with all his might."

At the time that she made her second observation she said she was applying the brakes on her car, which was still moving. When asked about speed, she replied, "Well, at that time it wasn't very much, be-

cause that was almost when—it happened so quickly. He hit the side of the car and I was stopped at the same time." She said that when she made that observation it was just a couple of seconds before the impact; that she thought her car was almost stopped at that time; and that she was driving "practically in the center of the street."

She claimed the boy hit the side of her car back of the bumper at the left front fender. She said her car did not travel after the collision; that when the boy hit the car he fell down; that she got out of the car immediately, picked him up, looked around to see if there was someone else in the area but no one was there.

She walked around back of the car, carrying the boy, and then talked with his mother and a Mrs. Rush, who came out about that time from the rear of their homes, on the east side of the street near the scene of the accident. Among other things, she claimed that the boy's mother said to him, "Danny, I told you you were going to get hit one of these days." At approximately that time a taxicab appeared and Danny, accompanied by his mother, was taken to the hospital.

Plaintiffs contend that there were conflicts between Mrs. Luta's testimony at the trial and her deposition taken previously, when, according to plaintiffs, she testified that she coasted or glided her car until the boy actually darted out from between the parked cars and that was when she applied her brakes.

In any event, Mrs. Luta testified at the trial that Danny "came out from between the cars somewhere"; that he "was running just as fast as his legs could carry him"; that "he hit the side of the car"; and that the part of her car that was involved was the left front fender back of the bumper. She further said that, "he hit the car and fell down" and that when she saw him after the accident, "he was right there next to the car." She did not recall whether she blew the horn on her car.

Mrs. Wozniak, the boy's mother, said she was at the back of her house when she heard a loud squealing noise from an automobile. She then went to the front sidewalk and saw Mrs. Luta carrying Danny. She described some of his injuries and said that she went to the hospital with him. She claims that she never told Mrs. Luta that her boy ran out on the street quite often nor that he had almost been hit before. The

only thing she recalled saying to Mrs. Luta was, "What you doing to my boy?"

Mr. Widlund, a Minneapolis police officer, was called to the scene of the accident about 1 p. m. When he got there he was met by Mrs. Luta who told him about hitting the boy and that he had been taken to the hospital. She pointed out to the officer where the car was and approximately where the accident took place. When he asked her if she had seen the boy prior to the accident, he said Mrs. Luta told him that she was not sure if it was that boy or another as there were children playing on the west side of the street.

The officer examined heavy, black skid marks on the street, which marks he approximated to be about 12 paces or 35 to 36 feet long. Mrs. Luta told him that the marks were left by her car. Testimony of the officer, however, made it clear that the car did not actually skid 36 feet. He pointed out that the marks left by the car wheels behind the car were less than a car length. In that connection he was asked:

"Q. So that actually behind the vehicle there was skid marks of only about half a car length.

"A. Yes, less than, yes about half a car length.

* * * * *

"Q. So that actually this automobile from the time the brakes took hold on the street traveled about half a car length to the point where it came to a stop.

"A. I [it] traveled about a car length * * *."

Mrs. Norma Rush, living in the immediate vicinity of the accident, was hanging clothes in her backyard when she heard a loud screech of brakes, which lasted about 2 seconds. She ran to the side of her house and, while she did not remember clearly what happened, she thought the next thing she saw was Mrs. Luta with Danny in her arms. It was her recollection that the cars in the street were parked "almost bumper to bumper."

At the trial, Danny was called to testify on his own behalf. The court refused to allow him to testify as to the happening of the accident because at the time of the accident he was only 5 years old and also be-

cause about 3 years had elapsed from the date of the accident to the date of the trial. However, the court did permit him to testify as to his complaints at the time of the trial.

The jury returned a verdict for the defendants. Thereafter plaintiffs moved the court for a new trial or for judgment notwithstanding the verdict on the grounds: (1) That the verdict was not justified by the evidence and was contrary to law; (2) misconduct of defendants' counsel; (3) errors of law which occurred at the trial and were objected to at the time, to wit: Not giving requested instructions as to unreasonable speed, failure to sound horn, and failure to be on the right side of the street, and not allowing plaintiffs' counsel to argue those points to the jury.

Plaintiffs' motion was denied.

Upon appeal to this court, plaintiffs assigned as errors the trial court's refusal: (1) To submit the question of speed to the jury; (2) to submit the question as to whether defendant driver was negligent in failing to sound her horn; (3) to instruct the jury that the defendant was guilty of negligence as a matter of law in driving on the left side of the street without justification or excuse; (4) to allow Danny to testify as to the happening of the accident; and (5) to grant plaintiffs a new trial based on misconduct of defendants' counsel. Plaintiffs also assigned as error the trial court's definition of proximate cause.

■ Plaintiffs' argument that the court erred in refusing to instruct the jury on the question of speed appears to be based on their claim that the jury could have found that Mrs. Luta was traveling at a speed in excess of 12 to 15 miles per hour just before the impact or that if only going that fast it was too fast for the time and place.

It is elementary that the burden of proof was on the plaintiffs in connection with the issue of speed. The only direct evidence on the issue was the testimony of Mrs. Luta that she was traveling about 12 to 15 miles per hour as she entered the block and that when she saw one of the children jump off the platform or steps she immediately applied the brakes and was stopped or almost stopped when the impact occurred. There was also evidence as to skid marks.

While it will serve no useful purpose for us to go into all of the de-

tails here, a review of the record satisfies us that the plaintiffs have not met the burden of proving that defendant was driving in excess of the speed limits under the facts and circumstances here. It is our opinion that the court did not err in refusing to submit the issue of speed under the testimony here.

■ In connection with plaintiffs' contention that the court erred in refusing to submit to the jury the question of whether the defendant was negligent in failing to sound the horn, the burden of proving their case was again on the plaintiffs.

Mrs. Luta said that she did not remember whether it was sounded. Mrs. Wozniak and Mrs. Rush testified as to hearing screeching or squealing noises of brakes but said nothing about hearing a horn.

The trial court in its memorandum took the position that under the circumstances there was no reason why they should be listening for a horn as they were not affected by any horn that might be blown. They were at the rear of their homes, cars were tightly parked at the curb, and the mere fact that they did not hear the sound of a horn would be of no probative value.

Evidence that a witness did not hear a whistle or bell, where there is nothing to indicate that he was listening for such signals, has been held to be of no probative value unless it appears that the circumstances were such that the witness in the ordinary course of events would have heard them if sounded. Perkins v. Chicago, M. & St. P. Ry. Co. 158 Minn. 184, 197 N. W. 758; Lawson v. Minneapolis, St. P. & S. S. M. Ry. Co. 174 Minn. 404, 219 N. W. 554.

We find no reversible error in connection with plaintiffs' second contention.

■ With respect to plaintiffs' claim that the court erred in refusing to instruct the jury that the defendant driver was negligent as a matter of law in driving on the left side of the street, the record shows that cars were parked almost bumper to bumper on both sides of the street. While it appears undisputed that the left wheels of defendants' car were 2 feet over the centerline, the real question seems to be whether that could have been the proximate cause of the accident under the circumstances here.

The trial court held that it had no causal effect. It is our opinion that there is no reversible error in that respect under the record here. There was testimony that at the time of the impact defendants' car was going slowly or was almost at a standstill and that the boy ran into the side of the car.

It seems to us that under the evidence the accident might well have taken place as it did whether the car was in the position it was or possibly 2 feet farther east, which would have placed it on its right side of the centerline. If the boy was "running with all his might," as the testimony shows, it would have taken only a step or two more for him to have still collided with defendants' car.

Plaintiffs argue, however, that Danny had the right-of-way while on the west side of the street and that in refusing to give the instruction the court deprived him of his right-of-way, citing Pettit v. Lifson, 238 Minn. 349, 355, 57 N. W. (2d) 34, 38. The situation was different in the Pettit case. There, defendant's delivery truck collided with a 9-year-old boy. The accident occurred in a 20-foot alley that ran north and south. The driver of the truck was proceeding southerly down the alley. After he had traveled some distance the truck struck the boy as the latter emerged from between two private garages located on the east side of the alley. There was evidence from which a jury might conclude that the truck was approximately 29 feet north of the point of impact when the boy suddenly emerged into the alley. The driver testified that within a space of 20 feet he could have swerved the truck to the right and applied his brakes; that a space of 25 feet would have been sufficient for him to have avoided contact with the boy. It was held that the trial court did not err in reading to the jury the Highway Traffic Regulation Act with reference to the duty of drivers to have proper lookout, to sound adequate warning, to have the vehicle under proper control, and to drive it at a reasonable rate of speed.

■ There was no abuse of discretion in refusing to allow the boy, who was 5 years old at the time of the accident, to testify some 3 years later regarding the accident; he was permitted to testify as to his complaints at the time of the trial. Even if it were an abuse of discretion, we would be unable to determine if it was prejudicial inasmuch as no offer of proof was made as to what testimony he would give.

■ A review of the record satisfies us that there is no reversible error on the part of the trial court in not granting a new trial on the basis of misconduct of defendants' counsel.

■ Plaintiffs claim the court erred in not instructing the jury as to the definition of "proximate cause." An examination of that instruction discloses that the trial court used an often-quoted definition from Mr. Justice Mitchell on the subject of proximate cause, which was entirely proper. However, in further explaining the doctrine, the trial court said:

"* * * Proximate cause is a primary moving cause or a predominating cause from which the injury follows as a natural, direct and immediate consequence and without which it would not have occurred."

No exception was taken at the time of the trial or at the time of the motion for a new trial. It has long been the rule that if a party fails to object to an instruction, the instruction as given becomes the law of the case. State, by Lord, v. Bradac, 257 Minn. 467, 102 N. W. (2d) 34.

In Strobel v. Chicago, R. I. & P. R. Co. 255 Minn. 201, 205, 96 N. W. (2d) 195, 199, this court said: "The instruction that a proximate cause is the *dominant* cause was clearly erroneous since a cause is dominant only if it excludes and overshadows all other causes."

While the reference in the instruction as to predominating cause was erroneous, it is not reversible in the light of the entire instruction on that point and in view of the fact that no objection was made to the instruction as given.

There was no reversible error in the refusal of the trial court to grant a new trial under the record here.

Affirmed.